**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AGNES HERCEG, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CHOBANI, LLC, 147 State Highway 320, Norwich, NY 13815,<br><br>      Defendant. | Case No. ___22-5137___<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Agnes Herceg ("Plaintiff" or "Herceg") individually and on behalf of other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant Chobani, LLC ("Chobani" or "Defendant"), regarding the deceptive marketing of Chobani's products. Defendant markets its products as beneficial to farm workers and animals involved in its supply chain based on being Fair Trade USA Certified, explicitly representing that its's products adhere to the "highest standards" for workers, "promote[] sustainable livelihoods," and "support[] . . . safe animal care." In stark contrast to its marketing representations, Chobani's products do not represent the highest standards for workers, nor do they promote sustainable livelihoods or safe animal care. Far from it. Instead, its representations are false, without basis, and are meant to deceive consumers. Indeed, the Fair Trade USA certification—which has been strongly opposed by farm workers for its lack of meaningful protections—falls far short of the "highest standards" available to dairy workers under other programs, fails to improve key factors for sustainable livelihoods beyond the bare minimum under U.S. law, and includes no standards whatsoever relating to animal care.

Plaintiff Herceg alleges the following based upon information, belief, and the investigation of her counsel:

## INTRODUCTION

1. Chobani, an American food company headquartered in New York, is one of the largest sellers of yogurt in the United States.[1] Fair Trade USA is an independent non-profit that sets standards that it claims protect farm workers and partners with businesses to certify certain products. Chobani sells "Fair Trade Certified™" dairy products (the "Products")[2] throughout New York and around the country.

2. Historically, farm workers in the United States have suffered from low wages, long hours, and an overall lack of legal protections afforded to workers in other industries. This disparity has had an overwhelmingly disproportionate impact on the immigrants and racial minorities who make up so much of the country's agricultural workforce. This has led to worker-led movements, including in the dairy industry, for better working conditions.

3. The treatment of farm animals has also been widely documented, with conditions like overcrowding, illness, and physical abuse being common for animals raised on large-scale dairy farms.

4. Increasingly, consumers have become aware of these injustices, creating a growing market segment of consumers who wish to purchase products more ethically by purchasing from companies that employ better protections for workers and animals.

---

[1] Trish Novicio, *15 Biggest Yogurt Companies in the World*, Yahoo Finance (Feb. 11, 2021), https://finance.yahoo.com/news/15-biggest-yogurt-companies-world-082724518.html.

[2] These include, but are not limited to, Chobani's 32-ounce, multi-serve Greek yogurt tubs, including Whole Milk Plain, Low Fat Plain, Non-Fat Plain, Strawberry Blended, and Vanilla Blended. Discovery may reveal that additional Chobani brands and products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

5.     During the Class Period (as defined below), on labels found both on the outside and beneath the lid of the Products, Chobani prominently advertises that the Fair Trade USA Certified Products promote sustainable worker livelihoods and safe animal care.

6.     Contrary to these advertisements, Chobani's touted certification fails to protect its workers or its animals.

7.     In fact, Chobani's certification scheme was vehemently opposed by the very workers it claims to benefit. Following calls by dairy workers for better working conditions, Chobani initially met with worker-led campaigns to discuss programs that would guarantee such improvements. However, Chobani ultimately decided to instead approach Fair Trade USA to partner on a new certification with lower standards than those developed by worker-led campaigns.

8.     Many of the certification's key standards, including on minimum wage and overtime, do no more than enshrine the weak protections for farm workers already existing under U.S. law, which fall short of protections afforded to non-agricultural workers in the United States, and of Fair Trade USA's own standards for workers abroad.

9.     This certification scheme also contains no standards whatsoever that apply to or support safe conditions for animals.

10.     Thus, Chobani's advertising—which suggests that the Products' certification signifies and ensures sweeping benefits for dairy workers and animals—is false and misleading.

11.     By deceiving consumers about the nature of the Products, Defendant is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take market share away from competing Products, thereby increasing its own sales and profits.

12.     Because Defendant's marketing of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff Herceg brings this deceptive

advertising case on behalf of herself and all others similarly situated and seeks equitable and monetary relief.

## FACT ALLEGATIONS

13.     Plaintiff Herceg brings this suit against Chobani based on misrepresentations that the Fair Trade USA Certified Products represent the "highest standards," "promot[e] sustainable livelihoods," and "support[] safe . . . animal care."

14.     Despite these explicit marketing representations, Chobani's Fair Trade USA certified products do not adhere to the highest standards that are available to dairy workers under other programs, fail to improve key factors for sustainable livelihoods beyond the bare minimum under U.S. law, and include no standards whatsoever relating to animal care.

15.     Chobani knows that American consumers increasingly seek out and will pay more for dairy products that are sustainable, that benefit the industry's workers, and that are produced in accordance with higher animal care standards.

16.     To capitalize on this market of consumers who wish to purchase more ethically-produced dairy, Chobani cultivates an image of the Products as being beneficial to workers and animals.

## I.     Chobani Represents That the Products Benefit Its Dairy Workers and Animals.

17.     Chobani's representations, which appear on the Products' labeling[3] during the Class Period, include the following statements:

- "When you choose our Fair Trade Certified™ Dairy you say:
  - Yes to products made under the *highest standards*.
  - Yes to *promoting sustainable livelihoods*.

---

[3]     *Chobani Plain Greek Yogurt, 32 oz*, Whole Foods Market, https://www.wholefoodsmarket.com/product/chobani-plain-greek-yogurt-b008u5ostq (last visited Jun. 17, 2022).

4

o   Yes to safe working conditions for farmers and workers.

o   Yes to taking care of the people who take care of animals.

o   Yes to strong, transparent supply chains." (Emphasis added.)





BILLIONS OF PROBIOT

Chobani is the first Fair Trade USA® dairy company in the country.
When you choose our Fair Trade Certified™ Dairy, you say:

Yes to products made under the highest standards.
Yes to promoting sustainable livelihoods.
Yes to safe working conditions for farmers and workers.
Yes to taking care of the people who take care of animals.
Yes to strong, transparent supply chains.

**Authentically crafted**
No artificial flavors
No artificial sweeteners
No preservatives
No gluten
No rBST**

For recipes using our
Non-Fat Plain Greek Yogurt,
**chobani.com/recipes**

**TEAR OFF LABEL AND RECYCLE CUP**

Per serving. Not a low-calorie food.

**Milk from rBST-treated cows is not significantly different.

- "Eating this yogurt empowers dairy farmers, ***supports safe*** working conditions and ***animal care***, and provides extra income to the people who helped make this product." (Emphasis added.)



18.    Chobani's worker and animal welfare representations are designed to lead, and do lead, consumers to believe that Chobani's Fair Trade Certified Products are made in a way that benefits farm workers and animals.

**II.    Contrary to Chobani's Representations, Its Fair Trade USA Certified Products Fail to Benefit Workers or Animals In Meaningful Ways.**

19.    Contrary to Chobani's Representations, its Products do not follow the highest standards with regards to workers, fail workers on key metrics, and have no standards whatsoever that pertain to animal care.

**A.    Chobani's Fair Trade USA Certification Has Been Opposed By Dairy Workers As Insufficient to Address Problems for Workers.**

20.    Similarly, Chobani's products fail workers on key metrics, and have no standards whatsoever that pertain to animal care.

21. By way of background, dairy workers suffer some of the highest rates of fatalities and injuries in U.S. agriculture[4] and dairy workers are routinely paid less than minimum wage, issues that are compounded by the vulnerabilities of the large immigrant population working at U.S. dairies, many of whom on average work 12 hours a day.[5]

22. These issues have grown even more acute in the wake of Chobani's growing popularity. Fatalities on New York dairy farms rose after Chobani began producing yogurt in 2007, with deaths peaking in 2014.[6]

23. And, problematically, farm workers have few legal protections under existing frameworks because they are exempt from many key labor laws, such as parts of the Fair Labor Standards Act that provide for overtime pay and on small farms, even basic Occupational Safety and Health Administration of workplace health and safety standards.[7]

23. In response to the many challenges for workers that are inherent in the dairy industry and the lack of effective legal redress outlined above, a growing chorus of worker and human rights groups sought to create meaningful labor protections for dairy workers.

---

[4] Teddy Ostrow & Amelia Evans, *Fair trade milk could be bad for US dairy workers' health*, Open Democracy (June 10, 2021), https://www.opendemocracy.net/en/beyond-trafficking-and-slavery/fair-trade-milk-could-be-bad-for-us-dairy-workers-health/.

[5] *See* Carly Fox et al., *Milked: Immigrant Dairy Farmworkers in New York State*, A Report by the Workers' Center of Central New York, and the Worker Justice Center of New York (2017), https://milkedny.files.wordpress.com/2017/05/milked_053017.pdf.

[6] *See* Olivia Heffernan and Margaret Gray, *For Chobani's Fair Trade Certification to Live Up to Its Promises, We'll Need Labor Unions*, Jacobin Magazine (Jan. 31, 2022), https://jacobinmag.com/2022/01/dairy-farmworkers-unions-safety-new-york-rwdsu-ufcw; Joanna Zuckerman Bernstein, *Dairy dangers: As production rises, so do concerns about farm workers' safety*, Albany Times Union (Jun. 7, 2014), https://www.timesunion.com/local/article/Dairy-dangers-As-production-rises-so-do-5536860.php.

[7] *See* Anna Canning, *Fair Trade Dairy at One Year: Labor Abuses, Low Standards, and Misleading Labels*, Fair World Project (Mar. 29, 2022), https://fairworldproject.org/fair-trade-dairy-chobani-labor-abuses/#link1; *Fact Sheet #12: Agricultural Employers Under the Fair Labor Standards Act (FLSA)*, U.S. Department of Labor (Jan. 2020), https://www.dol.gov/agencies/whd/fact-sheets/12-flsa-agriculture (noting that many agricultural workers including "[t]hose principally engaged on the range in the production of livestock" are exempt from FLSA minimum wage guarantees.).

24.     One relevant example is the Milk with Dignity campaign, spearheaded by labor groups actively collaborating with farm workers, which has been attempting to secure meaningful worker-led benefits in the industry.[8]

25.     Instead of collaborating with the Milk with Dignity campaign or other existing worker-led campaign, and despite meeting with these groups,[9] Chobani worked with Fair Trade USA to create a new dairy program with much **weaker** standards and **without input** from workers.

26.     Because these standards provided far less in terms of benefits and protections for dairy workers than those that were in development with other worker-led groups, more than 30 labor and human rights groups wrote to Chobani to **oppose** its partnership with Fair Trade USA, saying that they refused to participate in this "performative" process.[10]

27.     Chobani was not deterred by this vociferous opposition and instead went ahead with its own, non-worker-led certification scheme—piloted by Fair Trade USA.

28.     The timing of Chobani's Fair Trade USA certification (in 2021), which coincided with Chobani's announcement of its intent to go public through an Initial Public Offering and "a surge in investor interest in health-focused and socially responsible companies"[11] demonstrates the "performative" nature of this certification process.

**B.     Chobani's Fair Trade USA Certified Products Do Not Represent The Highest Standards for Dairy Workers and Do Not Promote Sustainable Livelihoods.**

29.     Chobani tells consumers that by buying the company's "Fair Trade Certified™ Dairy [they] say: Yes to products made under the **highest standards**."[12]

---

[8] *Milk with Dignity Campaign*, Migrant Justice, https://migrantjustice.net/milk-with-dignity-campaign (last visited Jun. 16, 2022).
[9] *For Chobani's Fair Trade Certification to Live Up to Its Promises, We'll Need Labor Union, supra* note 6.
[10] *Id.*
[11] Matthew Johnston, *Chobani IPO: What You Need to Know*, Investopedia (Nov. 18, 2021), https://www.investopedia.com/chobani-ipo-what-you-need-to-know-5210079.
[12] *Supra* ¶ 17 (emphasis added).

30. Consumers widely understand the term "fair trade" to relate to "establishing prices for products that allow for living wages for workers."[13] Moreover, Chobani's "highest standards" statement appears alongside numerous other statements referring to workers, including the claim that the Products "promot[e] sustainable livelihoods."[14]

31. Thus, reasonable consumers viewing Chobani's claim that Fair Trade USA certification signifies that its Products are made under the "highest standards" will understand Chobani to be claiming that it adheres to the highest standards possible for workers and their livelihoods.

32. Unfortunately, the Fair Trade USA standards used for the Chobani certification, which are a dairy-specific version of Fair Trade USA's general Agricultural Production Standards ("APS"),[15] do not provide the "highest standards" for workers and fail on key metrics for promoting sustainable livelihoods.

33. **First**, in some critical areas, the Fair Trade USA dairy standards Chobani utilizes are no better than the standards already existing under U.S. law. As discussed above, U.S. law currently enables exploitive labor practices such as a lack of a living wage or overtime protections.

34. This gap in worker protection is what originally necessitated a worker-led movement for better standards—but instead of filling these gaps, Chobani chose to work with Fair Trade USA to develop new standards, and then to adopt those standards, despite them merely enshrining the existing legal framework for key issues like living wage, overtime, and at-will employment.

---

[13] David Burgin & Robert Wilken, *Increasing Consumers' Purchase Intentions Toward Fair-Trade Products Through Partitioned Pricing*, Journal of Business Ethics (2021), https://doi.org/10.1007/s10551-021-04938-6.

[14] *See supra* ¶ 17.

[15] *Agriculture Production Standard 1.2.0*, Fair Trade USA (July 20, 2021), https://www.fairtradecertified.org/sites/default/files/standards/documents/FTUSA_STD_APSUSAmendment_EN_1.0.0_0.pdf.

35.     For example, labor advocates in the United States have highlighted that at-will employment status—the right to fire a worker for no reason at any time—is, unsurprisingly, one of the primary obstacles to workers' organizing. Yet rather than offering alternatives that could help workers, such as the Milk with Dignity Code of Conduct's requirement of just cause for termination,[16] Fair Trade USA makes it clear that its standard is in no way an exemption to workers' at-will employment status.

36.     In so doing, Fair Trade USA explicitly demonstrates that it is merely codifying inadequate existing labor laws, stating in its APS Module 3.1.1.c that its minimal requirements do not alter this problematic at-will worker status: "Please note that in most states in the United States, employment duration is considered 'at-will' by default. Documenting the terms of employment in the manner required by this criterion does not prevent employers from operating as an 'at-will' employer." [17]

37.     It is misleading for Chobani to tout its Fair Trade USA Certified Products as representing the "highest standards" or otherwise going beyond standards followed by the rest of the industry when that certification does nothing more than follow basic legal requirements (or lack thereof), particularly on areas where other programs for dairy workers provide higher standards.

38.     By failing to provide standards that would allow workers to organize without fearing for their jobs, Chobani's Fair Trade USA Certified Products cannot be said to "promote sustainable livelihoods."

---

[16]   *Milk With Dignity Code of Conduct*, Milk with Dignity Standard Council (2017) https://milkwithdignity.org/milk-dignity-code-conduct (requiring that "participating farms will not discharge or discipline a [worker] except for just cause and in accordance with progressive disciplinary measures").
[17] *Agriculture Production Standard 1.2.0 United States Amendment*, *supra* note 15.

39.     **Second**, it is indisputable that Chobani's Fair Trade USA certification cannot provide the "highest standards," as higher standards exist and are well documented. For example, the Milk with Dignity Program, which has been adopted by other major dairy companies,[18] actively guarantees higher wages, requiring producers to pay at least the local (rather than federal) minimum wage, and requires that premium funds are "used to get workers' earnings to the locally benchmarked Rural Livable Wage."[19]

40.     Chobani's Fair Trade USA certification does not provide for this kind of guaranteed increase in wages, instead it: (1) only requires the (often significantly lower) federal agricultural worker minimum wage and; (2) calls only for producers to have "awareness" of living wage concerns without any time-bound requirement for implementing those wages.[20]

41.     A few examples of how this difference might play out for farm workers are illustrative of the problematic failings of the Fair Trade USA standard.

42.     Under the Fair Trade USA standard, Dairy workers in Vermont, for example, would only be entitled to the federal minimum wage for agriculture workers, which is $7.25/hour. But, under the Milk with Dignity framework, they would be entitled to the state's general minimum wage, $12.55/hour, **and** the brand or company would then be required to use the monthly premium or bonus funds to get farmworkers from the minimum wage to that state's rural livable wage (which was roughly $13.39/hour in 2020).[21] Thus, the Milk with Dignity framework provides directly for farmworkers to ensure adequate payment and, in this example, would provide close to **double** what is required under the Fair Trade USA framework.

---

[18] *See Celebrating 3 Years of Milk with Dignity!*, Ben & Jerry's (Oct. 3, 2020), https://www.benjerry.com/whats-new/2020/10/milk-with-dignity.

[19] *Fair Trade Dairy at One Year*, *supra* note 7.

[20] *Id.*

[21] *Vermont Basic Needs Budgets and Livable Wage*, The Vermont Legislative Joint Fiscal Office (Jan. 1, 2021), https://ljfo.vermont.gov/assets/Subjects/Basic-Needs-Budgets/1defd5222f/2021-Basic-Needs-Budget-and-Livable-Wage-report-FINAL-1-16-2021.pdf.

43.     The results would be similar in Idaho, where Chobani sources much of its dairy.[22] Under the Fair Trade USA standard, farm workers in Idaho are only guaranteed the federal minimum wage for agriculture workers, $7.25/hour. In contrast, if a program similar to the Milk with Dignity framework had been as adopted by Chobani, the company would be required to pay premiums or bonuses directly to the workers until they reach the region's rural livable wage of roughly $15.60[23]—***more than double*** the hourly wage they would receive under the Fair Trade USA framework.

44.     By not providing concrete requirements for livable wages, one of the most basic factors relevant to a worker's livelihood, Chobani's Fair Trade USA certification cannot be said to adhere to the "highest standards" or to "promote sustainable livelihoods."

45.     The Fair Trade USA standard also falls far short of other efforts, including Milk with Dignity's, by not having any market consequences for non-compliance. The Milk with Dignity Code of Conduct is part of a legally binding purchase contract, meaning its terms are enforceable and that it can no longer tout this label and certification if it fails to abide by the contract's terms. Fair Trade USA's certification, by contrast, is not a binding contract and the label was in fact placed on the products before the related standards had even been finalized.[24]

46.     ***Third***, the Fair Trade USA standards for dairy workers that Chobani has adopted fall short of Fair Trade USA's own standards for workers outside of the United States.

---

[22] *See e.g., Animal Care,* Chobani, https://www.chobani.com/animal-care/ (last visited June 16, 2022) (noting that "in Southern Idaho where we make our yogurt, most dairying is done a few hundred yards from the family home.").

[23]     *Living Wage Calculation for Minidoka County, Idaho*, MIT: Living Wage Calculator, https://livingwage.mit.edu/counties/16067 (last visited June 16, 2022).

[24]     *Label Before Labor: Fair Trade USA's Dairy Label Fails Workers*, Fair World Project (May 2021), https://fairworldproject.org/wp-content/uploads/2021/06/LabelBeforeLaborFairTradeUSADairyFailsWorkersReport -2021-v4-web.pdf.

47. As the examples in the chart below show,[25] these inadequacies in Fair Trade USA's standards for dairy workers in the United States implicate critical issues like working hours, with the standards Chobani has adopted (Fair Trade USA's domestic standards) enabling exploitation and overworking:

|  | *Fair Trade USA Standards: International* | *Fair Trade USA Standards: USA* |
|---|---|---|
| Work Week | Workers do not work longer than *48 regular* hours per week, the level agreed to in applicable Collective Bargaining Agreements, or the legal limit, whichever is less. (FTUSA A.P.S. 3.4.1.a) | Workers do not work longer than *60 hours* per week regularly, the level agreed to in applicable Collective Bargaining Agreements, or the legal limit, whichever is less (FTUSA A.P.S. USA Amendment 3.4.1.a). |
| Overtime | Overtime does not exceed 12 hours per week or the legal limit, whichever is less. If workers agree in writing and if legally permitted, this limit can be increased up to a maximum of 72 total working hours per week for up to *four non-consecutive weeks per year* (FTUSA A.P.S. 3.4.2.c). | If total working hours per week exceed 60, it is limited to a maximum of 72 total working hours per week for *up to 12 weeks per year*, and is only done if workers agree in writing and if legally permitted (FTUSA A.P.S. USA Amendment 3.4.2.c). |

48. It is misleading for Chobani to tout its Fair Trade USA Certified Products as adhering to the "highest standards," when even Fair Trade USA itself provides higher standards on the crucial metric of preventing overtime abuse.

49. The failure of these standards to protect the workers it claims to benefit is evidenced by the fact that worker organizers report that, despite this standard having been implemented for

---

[25] *Fair Trade Dairy at One Year*, *supra* note 7.

nearly three years, "overwhelmingly, workers on participating farms don't know what 'fair trade' is."[26] As a report by Fair World Project notes, "That's not just a semantic problem. If workers don't know what fair trade is, it's almost impossible for them to meaningfully claim the protections they are supposedly entitled to, or to meaningfully comment on what is happening in their workplaces."[27]

### C. Chobani's Fair Trade USA Certification Does Not Include Any Standards on Animal Care.

50.     Contrary to Defendant's claims that the Fair Trade USA dairy certification "supports safe. . . animal care,"[28] the Agricultural Production Standard ("APS") that undergirds the certification is entirely silent about animal welfare.

51.     Despite broadcasting to consumers that the Products support "animal care," the APS is without **any** animal care or welfare provisions. It is therefore misleading for Chobani to present its Fair Trade USA certification to consumers as supporting safe animal care.

### III.     Chobani's Representations Are Material and Misleading to Consumers.

52.     Defendant's false and misleading representations that Chobani's Fair Trade USA certified Products adhere to the "highest standards," "promot[e] sustainable livelihoods," and "support[] safe . . . animal care" are materially misleading to consumers.

53.     A majority of consumers would stop buying from brands that they believe are unethical; 35% would stop buying from brands they perceive as unethical even if there is no substitute available.[29] Additionally, 63 percent of consumers feel that ethical issues are becoming more important.[30]

---

[26] *Id.*
[27] *Id.*
[28] *Supra* ¶ 17.
[29] *56% of Americans Stop Buying From Brands They Believe Are Unethical*, Mintel (Nov. 18, 2015), https://bit.ly/3xZVSaw.
[30] *Id.*

54.     A survey of 5,000 consumers showed that significant segments of the national consumer base prioritize "more transparency from food producers and retailers," "accountability and transparency through the entire food supply chain," and "fair treatment of workers."[31]

55.     Consumers also care about animal welfare.

56.     Research has shown that consumers place significant value on food carrying assurances of higher animal welfare and are more likely to purchase such products.[32]

57.     Because Chobani's certification scheme falls short of the comprehensive worker protection that Defendant advertises and is entirely inapplicable to animal welfare, Chobani's marketing of the Products as adhering to the "highest standards," "promoting sustainable livelihoods," and "supporting safe . . . animal care" is misleading to consumers.

## IV.    Chobani Has Knowledge of Its Labor and Animal Practices and Is Aware That Its Representations Are False.

58.     Chobani knows that it markets the Products as adhering to the "highest standards," "promoting sustainable livelihoods," and "supporting safe . . . animal care."

59.     Chobani also knows the reality of the labor practices and animal care on its suppliers' farms. Furthermore, Chobani knows that the Fair Trade USA standards fall short of the standards demanded by its workers and provided for under worker-led programs like Milk With Dignity (*see supra* Section II).

60.     Consumers frequently rely on food companies, their reputations, and the information provided in their advertising in making purchasing decisions.

---

[31]*Consumer Survey Shows Changing Definition of Food Safety*, Food Safety News, https://www.foodsafetynews.com/2016/02/123246/ (last visited Jun. 16, 2022).

[32] C. Victor Spain et al., *Are They Buying It? United States Consumers' Changing Attitudes Toward More Humanely Raised Meat, Eggs, and Dairy*, 8.8 Animals 128 (July 2018), doi:10.3390/ani8080128.

61.     Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of the ingredients in the Products.

62.     Reasonable consumers must, and do, rely on Chobani to honestly report how the Products are produced and its supply chain practices.

63.     Reasonable consumers have been, and continue to be, misled and deceived by Chobani to believe that they are purchasing products that support fair labor practices and animal welfare.

64.     Chobani made its false, misleading, and deceptive representations, and omitted the information that would counter them, knowing that consumers would rely upon the representations in purchasing the Products.

65.     In making the false, misleading, and deceptive representations regarding workers' empowerment and animal care at issue, Chobani intended for consumers to purchase the Products when consumers might otherwise purchase competing products.

66.     In making its false, misleading, and deceptive representations, Chobani also knew and intended that consumers would pay more for dairy products that were marketed as "Fair Trade Certified™" by Fair Trade USA, which Chobani represents as providing meaningful benefits to workers and animals, furthering Chobani's private interest of increasing sales of its Products and decreasing the sales of products that are truthfully marketed by its competitors.

67.     Chobani has profited enormously from consumers in New York as a result of its falsely marketed Products and its carefully orchestrated image.

68.     Chobani deceived and/or was likely to deceive the public by representing the Products as supporting dairy workers and animals.

69.     Consumers cannot discover the true nature of the Products by reading Chobani's marketing representations. The on-label representations do not provide any disclaimer or qualifying language for the representations at issue.

70.     Discovery of the true nature of the Products requires knowledge that is not available to the average reasonable consumer.

71.     The supply chain and production process Chobani uses for the Products is known to Chobani but has not been disclosed to Plaintiff Herceg or other consumers.

72.     To this day, Chobani continues to conceal and suppress the true nature, identity, source, and method of production of its Products, and to capitalize on the representations it has made regarding the worker and animal benefits of its Fair Trade USA Certified Products.

73.     Chobani's concealment tolls the applicable statute of limitations.

74.     Upon information and belief, Chobani has failed to remedy the false representations that the Products adhere to the "highest standards," "promot[e] sustainable livelihoods," and "support[] safe . . . animal care," thus causing future harm to consumers.

75.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, without curing the deceptive representations.

76.     Chobani has failed to provide adequate relief to purchasers as of the filing of this Complaint.

77.     Chobani's representations have conveyed a series of express and implied claims and/or omissions that it knows are material to the reasonable consumer in making purchasing decisions, and that Chobani intended for consumers to rely upon when choosing to purchase the Products.

78.     Had Chobani not made the false, misleading, and deceptive representations, Plaintiff Herceg and the Class members would not have been willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products at all, or to purchase as many of the Products.

79.     Upon information and belief, Chobani has profited enormously from the falsely and deceptively marketed Products.

## JURISDICTION AND VENUE

80.     This Court has personal jurisdiction over the parties in this case.

81.     Defendant Chobani LLC is a Delaware limited liability company headquartered in Norwich, New York.

82.     Defendant regularly conducts and transacts business in New York, purposefully avails itself of the laws of New York, markets the Products to consumers in New York, and sells the Products throughout New York.

83.     Plaintiff Herceg is a citizen of New York and consents to this Court's jurisdiction.

84.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff Herceg alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

85.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

**PARTIES**

86.    Plaintiff Agnes Herceg is an individual consumer who is a currently a citizen of Westchester County, New York.

87.    During the Class Period, Plaintiff Herceg purchased the 32 oz Chobani Non-Fat Plain Greek Yogurt product weekly from a Stop and Shop grocery located at 610 White Plains Road, Tarrytown, New York, 10591.

88.    Plaintiff Herceg, when she purchased the Products, saw and believed the on-Product representations that buying the Fair Trade USA certified yogurt meant saying "yes" to "products made under the highest standards," "sustainable livelihoods," and that the yogurt "supports safe. . . animal care." These representations were material to Plaintiff Herceg and encouraged her to make her purchases. Plaintiff Herceg relied upon these representations, which as a consumer she had no reason to doubt.

89.    Plaintiff Herceg would not have purchased the Products, or would not have purchased them on the same terms, if she had known that, contrary to Chobani's representations, the Fair Trade USA certification did not entail any meaningful benefits to farm workers or animals. Having encountered and believed Chobani's representations, Plaintiff Herceg neither expected nor anticipated that the Products she purchased would not deliver on any of these promises.

90.    Upon information and belief, Defendant maintains its headquarters in New York and is responsible for the marketing of the Products in New York.

91.    At all times mentioned herein, Defendant was and is engaged in commercial transactions in New York.[33]

---

[33] *Where to Buy: New York*, Chobani, https://www.chobani.com/where-to-buy/ (last visited Jun. 16, 2022).

## CLASS ALLEGATIONS

92.     Plaintiff Herceg brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

93.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased Chobani Products (as defined herein) in New York during the Class Period (the "New York Subclass").

94.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

95.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

(a)     Whether Defendant is responsible for the advertising at issue;

(b)     Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

(c)     Whether Chobani breached a warranty created through the marketing of its Products; and

(d)     Whether Chobani's conduct as set forth above injured Plaintiff Herceg and Class members.

96.     Plaintiff Herceg's claims are typical of the claims of the Class in that she was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

97.     The precise number of the Class members and their identities are unknown to Plaintiff Herceg at this time but may be determined through discovery.

98.     Plaintiff Herceg is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions involving false advertising, and she intends to prosecute this action vigorously.

99.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff Herceg and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

100.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Herceg's and the Class members' claims together is manageable. Unless the Class is certified, Defendant will remain free to continue

to engage in the wrongful conduct alleged herein without consequence.

101.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

102.    The prerequisites to maintaining a class action for equitable relief are met: by representing that the Products sold by Chobani ensure safe working conditions and animal care despite Chobani's Fair Trade USA certification ensuring none of these things, Chobani has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

103.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Chobani. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

104.    Chobani's conduct is generally applicable to the Class as a whole, and Plaintiff Herceg seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

105.    Plaintiff Herceg knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I

**Violations of the New York General Business Law § 349**
**(On Behalf of Plaintiff Herceg and the New York Subclass)**

106.    Plaintiff Herceg realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

107.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

108.    Chobani has marketed the Fair Trade USA Certified Products with representations that they adhere to the "highest standards," "promot[e] sustainable livelihoods," and "support[] safe . . . animal care" when, in fact, the touted certification falls short of higher standards that are available to dairy workers under other programs, fails to improve key factors for sustainable livelihoods beyond the bare minimum under U.S. law, and includes no standards whatsoever relating to animal care.

109.    Chobani has violated, and continues to violate, § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Chobani's violation of § 349, Plaintiff Herceg and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

110.    Chobani's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Herceg and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have purchased as much.

111.    Chobani made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

112.    Plaintiff Herceg and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

113.    Chobani's advertising induced Plaintiff Herceg and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

114.    As a direct and proximate result of Chobani's violation of § 349, Plaintiff Herceg and other members of the New York Subclass paid for falsely advertised Products and, as such,

have suffered damages in an amount to be determined at trial.

115.    By reason of the foregoing, Plaintiff Herceg and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

<u>**COUNT II**</u>

**Violations of the New York General Business Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

116.    Plaintiff Herceg realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

117.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

118.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

119.    NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

120.    Plaintiff Herceg and the members of the New York Subclass are consumers who purchased Chobani's Products in New York.

121.    As a seller of goods to the consuming public, Chobani is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

122.    Chobani's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Chobani's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising in violation of § 350.

123.    Chobani's false advertising was knowing and intentional.

124.    Chobani's actions led to direct, foreseeable, and proximate injury to Plaintiff Herceg and the members of the New York Subclass.

125.    As a consequence of Chobani's deceptive marketing scheme, Plaintiff Herceg and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products, and/or would have purchased less of the Products; moreover, as a result of Chobani's conduct, Plaintiff Herceg and the other members of the New York Subclass received products of less value than what they paid for.

126.    By reason of the foregoing, Plaintiff Herceg and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e(3).

## COUNT III
### Violation of State Consumer Protection Statutes
### (on Behalf of Plaintiff Herceg and All Class Members)

127.    Plaintiff Herceg realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

128.    Defendant's unfair, false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendant's Products have been marketed in, and purchased by Class members in the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d);

Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3), §13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

129.   On May 6, 2022, a pre-suit letter was sent to Chobani via certified mail that provided notice of Chobani's violations of state consumer protection statutes[34] and demanded that within thirty (30) days from those dates, Chobani correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Chobani refused to do so, a complaint seeking damages would be filed. Defendant received the letter on May 9, 2022 but has failed to take corrective action. Accordingly, Plaintiff Herceg, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

---

[34] This letter further provided notice regarding Defendant's breach of express warranty under the common law of the states where the Products are sold.

130.    Defendant violated these statutes by falsely and deceptively marketing the Products as adhering to the "highest standards," "promoting sustainable livelihoods," and "supporting safe . . . animal care."

131.    Defendant's deceptive marketing was material to Plaintiff Herceg's and Class members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

132.    Defendant acted willfully, wantonly, and with reckless disregard for the truth.

133.    Plaintiff Herceg and the Class members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

134.    Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and other appropriate injunctive and declaratory relief.

## COUNT IV
### Breach of Express Warranty
### (on Behalf of Plaintiff Herceg and All Class Members)

135.    Plaintiff Herceg realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

136.    Defendant provided Plaintiff and other members of the Class with written, express warranties that the Products were Fair Trade USA Certified and that they therefore they adhered to the "highest standards," "promot[ed] sustainable livelihoods," and "support[ed] safe . . . animal care."

137.    These affirmations of fact or promises by Chobani relate to the goods and became part of the basis of the bargain.

138.    Plaintiff Herceg and members of the Class purchased Chobani's Products believing

them to conform to the express warranties.

139.   Chobani breached these warranties, resulting in damages to Plaintiff Herceg and other members of the Class, who bought Chobani's Products but did not receive the goods as warranted.

140.   As a proximate result of the breach of warranties by Chobani, Plaintiff Herceg and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff Herceg and the Class members known the true facts, they would not have purchased Chobani's Products, or would have purchased Chobani's Products on different terms, or would have purchased fewer of Chobani's Products.

141.   Notice of these breaches of warranty was provided to Defendant as described in ¶ 129, *supra*, which is incorporated here by reference as if fully set forth herein.

142.   Plaintiff Herceg and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Herceg respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.   An order certifying the proposed Class and Subclass; appointing Plaintiff Herceg as representative of the Class and Subclass; and appointing Plaintiff Herceg's undersigned counsel as class counsel for the Class and Subclass;

B.   An order declaring that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.   An order declaring that Defendant's conduct violates the statutes referenced herein;

D.   An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under the statutes named herein;

E.   An order awarding compensation for breach of warranty;

F.   An order awarding Plaintiff Herceg and the other Class members the reasonable costs

and expenses of suit, including their attorneys' fees; and

G.   Any further relief that the Court may deem appropriate.

### **JURY TRIAL DEMANDED**

143.   Plaintiff Herceg hereby demands a trial by jury.

DATED: June 17, 2022

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (718) 705-4579
krichman@richmanlawpolicy.com

Clark A. Binkley
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (718) 705-4579
cbinkley@richmanlawpolicy.com

**ESBROOK P.C.**
Christopher Esbrook
321 N. Clark, Suite 1930
Chicago, IL 60654
T: (312) 319-7680
christopher.esbrook@esbrook.com

Erika Pedersen (*pro hac vice* forthcoming)
135 E. 57th Street, Suite 15-111
New York, NY 10022
T: (312) 319-7685
erika.giwa-amu@esbrook.com