UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AGNES HERCEG, *on behalf of herself and all others similarly situated*,

                      Plaintiff,

    v.

CHOBANI, LLC,

                      Defendant.

No. 22-CV-5137 (KMK)

OPINION & ORDER

---

Caroline Daniell, Esq.
Kim E. Richman, Esq.
Richman Law & Policy
Irvington, NY
*Counsel for Plaintiff*

Christopher Esbrook, Esq.
Lauren B. Wright, Esq.
Esbrook P.C.
Chicago, IL
*Counsel for Plaintiff*

Jamie A. Levitt, Esq.
Morrison & Foerster LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Agnes Herceg ("Plaintiff") brings this putative class action against Chobani, LLC ("Chobani" or "Defendant"), alleging that the labeling on Defendant's products is deceptive and misleading. (*See generally* Compl. (Dkt. No. 1).) Plaintiff brings claims for damages against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), N.Y. G.B.L. §§ 349, 350; (2) violations of numerous other state consumer protection statutes around the country on behalf of Plaintiff and all class members; and (3) common law

breach of express warranty. (*See id.* ¶¶ 106–42.) Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion"). (*See* Not. of Mot. (Dkt. No. 21).) For the foregoing reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant is a Delaware limited liability company with its headquarters in Norwich, New York. (Compl. ¶ 81.) Defendant is "an American food company . . . [which] is one of the largest sellers of yogurt in the United States." (*Id*. ¶ 1.) Defendant sells dairy products (the "Products") around the country, sold as "Fair Trade Certified$^{TM}$" products through Defendant's work with Fair Trade USA, which is "an independent non-profit that sets standards that it claims protect farm workers and partners with businesses to certify certain products." (*Id*.) While Plaintiff does not appear to allege that Defendant does not follow the Fair Trade USA standards, (*see generally* Compl.), Plaintiff does claim that Defendant's Products "misrepresent[] that the Fair Trade USA Certified Products represent the 'highest standards,' 'promot[e] sustainable livelihoods,' and 'support[] safe . . . animal care[,]'" (*see id*. ¶ 13, *see also id*. ¶ 52).

Plaintiff alleges that Defendant makes several false representations upon its Products, all associated with Defendant's certification through Fair Trade USA. (*See* Compl. ¶ 17.) Specifically, Plaintiff points to the following representations on the Products: "When you choose our Fair Trade Certified$^{TM}$ Dairy, you say: [y]es to products made under the highest standards, [y]es to promoting sustainable livelihoods, [y]es to safe working conditions for farmers and

workers, [y]es to taking care of the people who take care of animals, [and] [y]es to strong, transparent supply chains." (*Id.* (emphasis omitted).)



(*Id.*) Plaintiff also cites another representation that states that "[e]ating this yogurt empowers dairy farmers, *supports safe* working conditions and *animal care*, and provides extra income to the people who helped make this product." (*Id.* (emphasis in original).)



3

(*Id*.)  Plaintiff alleges that, "[d]espite these explicit marketing representations, Chobani's Fair Trade USA certified products do not adhere to the highest standards that are available to dairy workers under other programs, fail to improve key factors for sustainable livelihoods beyond the bare minimum under U.S. law, and include no standards whatsoever relating to animal care." (*Id*. ¶ 14; *see also id*. ¶¶ 6–10, 19–20.)

Plaintiff grounds her allegations in Chobani's process by which it chose to work with Fair Trade USA, and the existence of other third-party standards to promote better working conditions.  Plaintiff alleges that, "[f]ollowing calls by dairy workers for better working conditions, Chobani initially met with worker-led campaigns to discuss programs that would guarantee such improvements.  However, Chobani ultimately decided to instead approach Fair Trade USA to partner on a new certification with lower standards than those developed by worker-led campaigns."  (*Id*. ¶ 7.)  For example, Plaintiff points to the "Milk with Dignity campaign," which is "spearheaded by labor groups actively collaborating with farm workers, which has been attempting to secure meaningful worker-led benefits in the industry."  (*Id*. ¶ 24.) However, Plaintiff alleges that "[i]nstead of collaborating with the Milk with Dignity campaign or other existing worker-led campaign[s], and despite meeting with these groups, Chobani worked with Fair Trade USA to create a new dairy program with much weaker standards and without input from workers."  (*Id*. ¶ 25 (emphasis omitted).)  Accordingly, "[b]ecause these standards provided far less in terms of benefits and protections for dairy workers than those that were in development with other worker-led groups," (*id*. ¶ 26), Fair Trade USA standards "do not provide the 'highest standards' for workers and fail on key metrics for promoting sustainable livelihoods[,]" (*id*. ¶ 32).

4

Plaintiff alleges that Defendant's statements mislead consumers for four key reasons. (*See id*. ¶¶ 33–51.)  First, Plaintiff alleges that "in some critical areas, the Fair Trade USA dairy standards Chobani utilizes are no better than the standards already existing under U.S. law." (*Id*. ¶ 33; *see also id*. ¶¶ 34–38.)  As such, Plaintiff alleges that it is misleading for Defendant to state that its products represent the "highest standards" because the "certification does nothing more than follow basic legal requirements" and "cannot be said to 'promote sustainable livelihoods.'" (*Id*. ¶¶ 37–38.)  Second, Plaintiff alleges that "it is indisputable that Chobani's Fair Trade USA certification cannot provide the 'highest standards,' as higher standards exist and are well documented." (*Id*. ¶ 39; *see also id*. ¶¶ 40–45.)  Third, Plaintiff alleges that "the Fair Trade USA standards for dairy workers that Chobani has adopted fall short of Fair Trade USA's own standards for workers outside of the United States." (*Id*. ¶ 46; *see also id*. ¶¶ 47–49.)  Fourth and finally, Plaintiff alleges that "[c]ontrary to Defendant's claims that the Fair Trade USA dairy certification 'supports safe . . . animal care,' the Agricultural Production Standard that undergirds the certification is entirely silent about animal welfare[,]" misleading consumers as to whether Defendant's certification requires "safe animal care." (*Id*. ¶¶ 50–51.)

Based on these claims, Plaintiff alleges that Defendant's representations that the Products adhere to the "highest standards," "promot[e] sustainable livelihoods," and "support[] safe . . . animal care" are materially misleading to consumers because Defendant's certification "falls short of the comprehensive worker protection that Defendant advertises and is entirely inapplicable to animal welfare." (*Id*. ¶ 57; *see also id*. ¶ 52.)  Plaintiff further alleges that "[b]y deceiving consumers about the nature of the Products, Defendant is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take market share away from competing Products, thereby increasing its own sales and profits." (*Id*. ¶ 11.)

5

At some unidentified time during the "Class Period," Plaintiff purchased the 32 oz Chobani Non-Fat Plain Greek Yogurt product weekly from a Stop and Shop grocery store located at 610 White Plains Road, Tarrytown, New York, 10591. (*See id*. ¶ 87.) Plaintiff alleges that "when she purchased the Products, [she] saw and believed the on-Product representations that buying the Fair Trade USA certified yogurt meant saying 'yes' to 'products made under the highest standards,' 'sustainable livelihoods,' and that the yogurt 'supports safe . . . animal care.'" (*Id*. ¶ 88.) Plaintiff "relied upon these representations," and "would not have purchased the Products, or would not have purchased them on the same terms, if she had known that, contrary to Chobani's representations, the Fair Trade USA certification did not entail any meaningful benefits to farm workers or animals." (*Id*. ¶¶ 88–89.) "Had Chobani not made the false, misleading, and deceptive representations, Plaintiff [] and the Class members would not have been willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products at all, or to purchase as many of the Products." (*Id*. ¶ 78.)

B. Procedural History

Plaintiff filed her initial Complaint on June 17, 2022. (*See* Compl.) On September 9, 2022, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss the Complaint. (*See* Dkt. Nos. 9, 10.)[1] Following Plaintiff's response to Defendant's pre-motion letter, (*see* Dkt. No. 12), the Court held a pre-motion conference on November 9, 2022 and set a briefing schedule, (*see* Dkt. (minute entry for Nov. 9, 2022); Order (Dkt. No. 20)).

Pursuant to the briefing schedule, Defendant filed the instant Motion on December 15, 2022. (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Def's Mem.") (Dkt. No.

---

[1] Defendant filed two identical letters due to a filing error on September 9, 2022 and September 14, 2022. (*See* Dkt. Nos. 9, 14.)

22)).)  Plaintiff filed her Opposition on January 19, 2023, (*see* Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Mem.") (Dkt. No. 23)), and, after receiving an extension, (*see* Dkt. No. 25), Defendant filed its Reply on February 17, 2023, (*see* Def's Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def's Reply") (Dkt. No. 26)).

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

7

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at 95 (citation omitted). Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the heightened pleading standard set forth in Rule 9(b). *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding

8

condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)). "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)). As explained by the Second Circuit, Rule 9(b) requires a Plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley*, 797 F.3d at 171 (citation omitted).

    B.  Analysis

    Defendant argues that (1) Plaintiff's complaint fails to state claims under the GBL for numerous reasons, including that Plaintiff cannot base her GBL claims on criticisms of the Fair Trade USA standards, (*see* Def's Mem. 8–17); (2) Plaintiff's non-New York consumer claims must be dismissed for lack of jurisdiction, (*see id*. at 17), and (3) Plaintiff's express warranty claims must fail for several reasons, (*see id*. at 17–20). The Court addresses each argument to the extent necessary to decide the instant Motion.

                1.  New York General Business Law § 349 and § 350 Claims

    "Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. L.

9

§§ 349, 350). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in original)). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 160 (quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a d]efendant's actions"). "While it is possible for a court to decide this inquiry as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to

dismiss stage." *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases). "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

Here, Defendant challenges almost every aspect of Plaintiff's ability to state a claim under the GBL. (*See generally* Def's Mem.) However, both Plaintiff and Defendant primarily argue about whether Plaintiff's theory is actionable *at all* under the GBL. Specifically, the Parties disagree as to whether the existence of other, possibly "higher" standards of protection for dairy workers means that Defendant's statements about the sufficiency of its Fair Trade USA certification is materially misleading. (*See generally* Def's Mem.; Pl's Mem.) Two district courts in the Second Circuit have directly addressed this question, and their analysis is instructive to the instant Action.

In *Lee v. Canada Goose US, Inc.*, No. 20-CV-9809, 2021 WL 2665955 (S.D.N.Y. June 29, 2021), the plaintiff challenged numerous representations made by Canada Goose stating that "the fur on the jacket was sourced using ethical and humane trapping methods." *Id*. at *1. The plaintiff challenged three specific representations that "suggest[ed] that the fur-sourcing practices used by Canada Goose trappers prevent the infliction of extreme pain or distress on animals trapped for its fur products when they do not." *Id*. at *2 (quotation marks omitted). In addition,

the plaintiff alleged that the standards it followed to ensure compliance "themselves authorize inhumane trapping practices that reasonable consumers would perceive as neglectful and unduly harmful." *Id*. at *3. In analyzing these claims against the District of Columbia Consumer Protection Procedures Act ("CPPA"), Judge Marrero found that these claims "fail to make out a claim under the CPPA," noting "[t]hat the relevant standards may nonetheless be inhumane or inadequate does not render [the d]efendants' representations as to compliance false or misleading." *Id*. at *6. However, the court did find that the plaintiff plausibly alleged that one of Canada Goose's statements was misleading to reasonable consumers. *See id*. at *7. Specifically, the court found that, "[t]hough the allegations [were] thin," the plaintiff had plausibly pleaded that the defendant's statements that the fur was sourced in an "ethical, responsible, and sustainable" manner were misleading to reasonable consumers. *Id*. Although the plaintiff did not explicitly allege that the defendant sourced fur using the problematic methods plaintiff described, the plaintiff did allege that these methods were "used in all Canadian provinces and across the U.S."—from which the defendant sourced its fur—and were "widely used in the U.S. and Canada, including by trappers who abide by the standards cited by" the defendant. *Id*. at *7 (quotation marks omitted).

In *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137 (S.D.N.Y. 2022), the plaintiff challenged the defendant's advertising regarding the product's environmental impact, with representations such as: "Sustainability Meets Style," "Low Carbon Footprint," "Environmentally Friendly," "Made with Sustainable Wool," "Reversing Climate Change," and "Our Sustainable Practices." *Id*. at 144. The plaintiff alleged the defendant's environmental claims were misleading primarily by criticizing the defendant's use of the Higg Material Sustainability Index ("Higg MSI"), which the plaintiff said only addressed raw materials and lacked sufficient standards for comparing

12

different materials, and was also criticized by unnamed independent researchers who found the Higg MSI to be "unsuitable 'for public disclosure or comparative assertions.'" *Id*. at 145. Judge Seibel dismissed the plaintiff's claims, relying in part upon *Lee*, stating that "[t]here may well be room for improvement in the Higg MSI, but that does not suggest that reliance on the current standard is deceptive." *Id*. at 151 (citation omitted). Judge Seibel reasoned that the plaintiff's allegations about the Higg MSI standards were "simply a critique of its methodology" and that the plaintiff "provide[d] no facts suggesting that a reasonable consumer would . . . otherwise expect that a more expansive standard be used." *Id*.

### a. "Highest Standards" and "Promot[e] Sustainable Livelihoods"

Here, as to Defendant's alleged representations that Fair Trade USA Certified products represent the "highest standards" and "promot[e] sustainable livelihoods," the Court agrees with the persuasive authority in the Second Circuit that undercuts the viability of Plaintiff's claim. Throughout Plaintiff's extensive Complaint, Plaintiff at no time alleges that Defendant does not meet the standards of Fair Trade USA, or even point to specific ways that Chobani itself is not "promoting sustainable livelihoods." (*See generally* Compl.) Instead, Plaintiff argues that Defendant chose to work with a campaign and certification process that Plaintiff would not have chosen herself, and, by representing that Fair Trade Certified Dairy is "made under the highest standards," Defendant is materially misleading consumers because there are better standards in the industry. (*See id*. ¶¶ 20–32.) However, "[t]hat Plaintiff . . . believe[s] that Defendant should use a different [certification process] does not plausibly suggest that what Defendant in fact says is materially misleading." *Dwyer*, 598 F. Supp. 3d at 150; *see also Lee*, 2021 WL 2665955, at *6 ("[T]he alleged inadequacy of the standards imposed is not enough to render the statements actionable."). Plaintiff's allegations are, at most, "a criticism of the [certification's]

13

methodology, not a description of a false, deceptive, or misleading statement about the Product." *Dwyer*, 598 F. Supp. 3d at 149.

In opposition, Plaintiff first argues that she "does not challenge Chobani calling the Products 'Fair Trade USA certified,'" but instead "challenges Chobani's prominent and independent representations about what this certification means for the Products." (Pl's Mem. 9.) However, this is a distinction without merit. Plaintiff's allegations are, at their core, challenging the sufficiency of the standards of the certification, with which Defendant states that they are complying. (*See* Compl. ¶ 17 ("Chobani is the first Fair Trade USA dairy company in the country. When you choose our Fair Trade Certified™ Dairy, you say: Yes to products made under the highest standards.").) As such, *Dwyer* and *Lee* are directly relevant.

Second, Plaintiff argues that *Lee* supports her claim, as the court "denied the defendant's motion to dismiss as to the representations that provided qualitative details about what some of these certifications mean for the products." (Pl's Mem. 9.) However, though the plaintiff's allegations were "thin," the plaintiff in *Lee* provided actual, actionable examples of fur harvesting practices that were not "ethical." Specifically, the plaintiff alleged, among other things, that "Canada Goose's suppliers use cruel methods that cause strangulation and broken bones to coyotes and other animals who are inadvertently trapped and discarded." *Lee*, 2021 WL 2665955, at *2. The court found that, though "[t]hough [the plaintiff] does not explicitly allege that Canada Goose sources fur from coyotes trapped using these methods . . . such a conclusion can be drawn reading the Complaint in the light most favorable to the Plaintiff." *Id*. at *7. The court cited such allegations that snares are "widely used in the U.S. and Canada, including by trappers who abide by the standards cited by Canada Goose" and such practices "cause completely unnecessary suffering and death for countless animals and are not 'ethical' or

14

'sustainable.'" *Id*. Here, even construing the Complaint in the light most favorable to Plaintiff, there are no such comparable or plausible allegations. It is true that Plaintiff provided some examples of ways that the Fair Trade USA certification falls below Milk for Dignity, or otherwise may not be as "high" of a standard as Plaintiff would like. However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging. For example, Plaintiff alleges that "[c]onsumers widely understand the term 'fair trade' to relate to 'establishing prices for products that allow for living wages for workers.'" (Compl. ¶ 30.) As an example of the failings of the Fair Trade USA certification, Plaintiff alleges that the certification "does not provide for . . . guaranteed increase[s] in wages" but instead "only requires the (often significantly lower) federal agricultural worker minimum wage and . . . calls only for producers to have 'awareness' of living wage concerns without any time-bound requirement for implementing those wages." (*Id*. ¶ 40.) Plaintiff points to farm workers in Idaho "where Chobani sources much of its dairy" and states that they are "only guaranteed the federal minimum wage for agriculture workers" but, under the Milk with Dignity framework, "the company would be required to pay premiums or bonuses directly to the workers until they reach the region's rural livable wage" which is "more than double" the guarantee by Fair Trade USA. (*Id*. ¶ 43.) However, unlike *Lee*, Plaintiff makes no allegations about the actual practices of what workers receive in Idaho, instead arguing based on what they are "guaranteed." (*See generally* Compl.) In *Lee*, the plaintiff alleged that the unethical practice was "widely used," allowing the Court to extrapolate that it was plausible that Canada Goose's fur could be affected. *Lee*, 2021 WL 2665955, at *7. Plaintiff instead rests upon a hypothetical, surmising that because the Fair Trade USA certification's guarantees are not as "strong" as Milk for Dignity or other programs, the dairy farms must not be following those

15

heightened requirements. However, without more, there is no plausible basis to make such a leap where Plaintiff does not allege as such.

Finally, Plaintiff also alleges that Defendant "intentionally omits material facts that could correct, qualify, or remedy its misrepresentations." (Pl's Mem. 13 (citing Compl. ¶¶ 61, 64, 69–72).) "[A] plaintiff can only state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (quotation marks); *see also Yodice v. Touro Coll. & Univ. Sys.*, No. 21-CV-2026, 2021 WL 5140058, at *5 (S.D.N.Y. Nov. 4, 2021) (same). Applying the reasoning of Judge Seibel in *Dwyer*, "Defendant clearly did not alone possess the allegedly omitted information," *Dwyer*, 2022 WL 1136799, at *6, given that Plaintiff cites to numerous other standards, publicly available resources, and the "growing chorus of worker and human rights groups" working to "create meaningful labor protections for dairy workers[,]" (Compl. ¶ 23). Plaintiff concedes as much, stating that a "consumer could research the Fair Trade USA standard for dairies as well as existing law and other available standards," but argues that "it would take significant effort and sophistication for consumers to learn that much of the Fair Trade USA standard fails to go beyond laws that apply to all dairy farms and that better standards exist." (Pl's Mem. 14.) However, "[t]here is no obligation under GBL § 349 or § 350 to provide whatever information a consumer might like to know." *Dwyer*, 598 F. Supp. 3d at 151; *see also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) ("In the case of omissions in particular . . . [§ 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation."); *Gordon*, 2022 WL 836773, at *10 (noting that the plaintiff failed to plausibly allege

16

that defendant improperly omitted information because, according to the plaintiff, health experts had been publishing it for years).

Accordingly, Plaintiff's GBL claims as to Defendant's representations regarding the "highest standards" and "promoting sustainable livelihoods" fail to state a claim.

### b.  "Supports Safe . . . Animal Care"

Plaintiff also alleges that Defendant's statement that they "support[] safe . . . animal care" is materially misleading because "the Agricultural Production Standard ('APS') that undergirds the certification is entirely silent about animal welfare." (Compl. ¶ 50; *see also id*. ¶ 51 ("Despite broadcasting to consumers that the Products support 'animal care,' the APS is without *any* animal care or welfare provisions.  It is therefore misleading for Chobani to present its Fair Trade USA certification to consumers as supporting safe animal care." (emphasis in original)).) Defendant argues that the Fair Trade USA standards, which are incorporated by reference in the Plaintiff's Complaint, "do address animal welfare" requiring that "Fair Trade Certified producers comply with 'any local and national laws that govern the care and treatment of farm animals.'" (Def's Mem. 11–12 (emphasis omitted).)[2]  The Court agrees with Defendant.  The APS states that "[a]ll Fair Trade Certified producers are expected to comply with all local and national laws

---

[2] While it is, of course, correct that on a motion to dismiss, courts are instructed to "not only accept all factual allegations as true but also draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at 94 (quotation marks omitted), it is also well-settled that "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true," *Owolabi v. Bank of Am., N.A.*, No. 18-CV-3991, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019) (quoting *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014)).  Here, Plaintiff relies heavily upon the Fair Trade USA standards used for Defendant's certification, "which are a dairy-specific version of Fair Trade USA's general Agricultural Production Standards[.]"  (Compl. ¶ 32.)  Plaintiff also cites to these standards in the Complaint itself.  (*See id*. ¶ 32 n. 15.)  As such, the Court will consider the APS in analyzing Plaintiff's claims.

and regulations" which, "[f]or dairies, . . . includes any local and national laws that govern the care and treatment of farm animals." *Agriculture Production Standard 1.2.0*, Fair Trade USA (July 20, 2021) at 8 & n.7, https://assets.fairtradecertified.org/image/upload/v1654625272/Standards/Agricultural%20Production%20Standard%20USA/FTUSA_STD_APS_EN_1.2.0.pdf. Accordingly, Plaintiff's allegations are implausible: the APS are not "entirely silent about animal welfare," (*see* Compl. ¶ 50), it has a specific provision for dairies that requires that they follow local and national laws regarding animal welfare. Plaintiff's sole response to this argument can be found in a footnote, where Plaintiff states that "compliance with existing laws" is not an "independent standard." (Pl's Mem. 5 n.4; *see also id*. at 14 ("Chobani misrepresents that its Fair Trade USA certification is better for animals when, as Chobani admits, the standard requires only that dairies comply with existing law governing the treatment of farm animals." (citation omitted)).) However, this misrepresents the relevant inquiry. Plaintiff's allegations are demonstrably false, and Plaintiff's remaining arguments again solely quibble with the "alleged inadequacy of the standards imposed" which is "not enough to render the statements actionable." *Lee*, 2021 WL 2665955, at *6.

Accordingly, Plaintiff's GBL claims as to Defendant's representations regarding animal care also fail to state a claim.[3]

---

[3] As Plaintiff has not alleged a valid claim under the GBL, Plaintiff's cause of action based upon other states' laws must be dismissed as the Court lacks jurisdiction over the state-law class claims of the unnamed putative class members. *See Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808, 2018 WL 9346682, at *8 (E.D.N.Y. Sept. 17, 2018) (collecting cases) (dismissing putative out-of-state consumer protection claims after dismissing the individual claims of the named plaintiffs), *aff'd*, 954 F.3d 492 (2d Cir. 2020).

### 2. Breach of Express Warranty

"An express warranty is an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Barreto*, 518 F. Supp. 3d at 806 (quotation marks omitted). To adequately state a claim for breach of an express warranty under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)). In addition, New York law requires that the buyer, "within a reasonable time after [s]he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2-607(3)(a)).

Defendant argues five separate reasons as to why Plaintiff has not sufficiently alleged a claim for a breach of an express warranty, and the Court agrees, at least as to one argument. For all the reasons previously stated, Plaintiff has not alleged that the Products "do not comport with the statements on their packaging, and thus ha[s] failed to allege a breach of any warranty." *Cosgrove*, 520 F. Supp. 3d at 585. At best, Plaintiff has alleged that Defendant has indeed followed the Fair Trade USA standards, which is what is represented on the Products. (*See generally* Compl.) "[E]ven if these statements are sufficiently specific to create express warranties, [Plaintiff] fails to plausibly allege that these warranties were breached, i.e. that the product was not as described by [Defendant]." *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018).

Accordingly, Plaintiff's claim for breach of express warranty is dismissed.

III. Conclusion

For the foregoing reasons, Defendant's Motion is granted. The Clerk of Court is respectfully directed to terminate the pending motion. (*See* Dkt. No. 21.)

Because this is the first adjudication of Plaintiff's claims on the merits, dismissal of Plaintiff's claims is without prejudice. To the extent Plaintiff has a good faith basis for filing an amended complaint, she must do so within 30 days of the date of this Opinion & Order. Failure to properly and timely amend will result in dismissal of these claims with prejudice.

SO ORDERED.

Dated:   September 21, 2023
          White Plains, New York

KENNETH M. KARAS
United States District Judge