**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AGNES HERCEG, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CHOBANI, LLC,<br><br>*Defendant*. | Case No.: 22-CV-5137-KMK<br><br>Hon. Kenneth M. Karas<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHOBANI, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHOBANI, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ................................................................................................................. 7

   I.   **Plaintiff Has Sufficiently Pled Claims Under New York General Business Law Sections 349 and 350** ............................................................................................ 7

   II.   **Plaintiff Has Sufficiently Pled Claims Establishing Chobani's Deceptive Advertising and Misleading Representations** ......................................................... 10

      A.   **Defendant Chobani's Representations That the Products Represent "The Highest Standards" and "Promot[e] Sustainable Livelihoods" are Deceptive and Misleading** ........................................................................................................... 10

      B.   **Defendant Chobani's Representations That the Products "Support[] Safe . . . Animal Care" Are Deceptive and Misleading** ............................................... 16

   III.   **Plaintiff Has Sufficiently Pled Claims Establishing Defendant Chobani's Failure to Include Material Facts to Remedy its Misrepresentations** ................................. 19

   IV.   **Plaintiff Has Sufficiently Pled a Claim for Breach of Express Warranty** ............. 22

CONCLUSION ............................................................................................................. 24

# **TABLE OF AUTHORITIES**

## Cases

*Ackerman v. Coca Cola Co.*, No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ............................................................................................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................7, 9, 13

*Belfiore v. P&G*, 311 F.R.D. 29 (E.D.N.Y. 2015) ...........................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................7, 9, 13

*Bildstein v. MasterCard Int'l, Inc.*, No. 03 Civ. 9826 (WHP), 2005 U.S. Dist. LEXIS 10763 (S.D.N.Y. June 7, 2005)..................................................................................................................22

*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................10

*DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 U.S. Dist. LEXIS 10733 (S.D.N.Y. Jan. 23, 2018)................................................................................................................10

*Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. Sept. 20, 2015) ...........................................................................................................................................22

*Dorris v. Danone Water of Am.*, No. 22 Civ. 8717 (NSR), 2024 U.S. Dist. LEXIS 5262 (S.D.N.Y. Jan. 10, 2024)...........................................................................................................8, 16

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ..........................................13

*Dwyer v. Allbirds, Inc.*, 589 F. Supp. 3d 137 (S.D.N.Y. 2022) ....................................................10

*Eidelman v. Sun Prods. Corp.*, No. 16-cv-3914 (NSR), 2017 U.S. Dist. LEXIS 156420 (S.D.N.Y. Sept. 17, 2017) ......................................................................................................................8, 13, 15

*Feliciano v. GM LLC*, No. 14 Civ. 06374 (AT), 2016 U.S. Dist. LEXIS 194728 (S.D.N.Y. Mar. 31, 2016) .......................................................................................................................................22

*Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d (S.D.N.Y. 2022).................................20, 21

*Fishon v. Peloton Interactive, Inc.*, No. 19-cv-1171 (LJL), 2020 U.S. Dist. LEXIS 208861 (S.D.N.Y. Nov. 9, 2020) ................................................................................................................9

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016)................9

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...22

*Gordon v. Target Corp., No. 20-CV-9589* (KMK), 2022 U.S. Dist. LEXIS 48769 (S.D.N.Y. Mar. 18, 2022) .......................................................................................................................................20

*Hughes v. Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016) .............................................................9

*Lee v. Can. Goose U.S., Inc.* No. 20-CV-9809 (VM), 2021 U.S. Dist. LEXIS 121084 (S.D.N.Y. June 29, 2021) ........................................................................................................................10

*Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109 (N.D. Cal. 2018) ............................19

*Mogull v. Pete & Gerry's Organics, LLC*, 588 F. Supp. 3d 448 (S.D.N.Y. 2022).......................23

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ................................................................7

*Pellman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) .........................................21

*Rankin v. Arca Cont'l S.A.B. de C.V., No. 20-CV-1756*, 2023 U.S. Dist. LEXIS 142602 (E.D.N.Y. Aug. 15, 2023) ...........................................................................................................16

*Richardson v. Edgewell Pers. Care, LLC*, No. 23-18, 2023 U.S. App. LEXIS 28725 (2d Cir. Oct. 30, 2023) ...................................................................................................................................23

*Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ..............................................................................................................................................7

*Segovia v. Vitamin Shoppe, Inc., No. 14-CV-7061* (NSR), 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016) ..............................................................................................................15

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)..........................................................................................................16

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015)............................................................................................................8

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools, No. 22-cv-05086*, 2023 U.S. Dist. LEXIS 100438 (N.D. Cal. May 19, 2023) ............................................................16, 18, 19

*Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) ................................22

*Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (Seibel, J.)..7

*Wiggins v. Unilever U.S.,, Inc.*, No. 21 Civ. 1964 (PGG), 2023 U.S. Dist. LEXIS 128592 (S.D.N.Y. July 25, 2023) (Gardephe, J.)......................................................................................9

*Wynn v. Topco Assocs., LLC, No. 19-CV-11104* (RA), 2021 U.S. Dist. LEXIS 9714 (S.D.N.Y. Jan 19, 2021).........................................................................................................................7, 22

*Yodice v. Touro Coll. & Univ. Sys., No. 21-CV-2026* (DLC), 2021 U.S. Dist. LEXIS 213930 (S.D.N.Y. Nov. 4, 2021) ...........................................................................................................20

**Statutes**

N.Y. U.C.C. § 2-607(3)(a) ...........................................................................................................22

**Other Authority**

Anna Canning, *Fair Trade Dairy at One Year: Labor Abuses, Low Standards, and Misleading Labels*, Fair World Project (Mar. 29, 2022), https://fairworldproject.org/fair-trade-dairy-chobani-labor-abuses/ ......................................................................................................................15

Fair Trade Certified, *Fair Trade USA Launches First-Of-Its-Kind Certification Program for U.S. Dairy Industry* (May 6, 2021), https://www.fairtradecertified.org/news/fair-trade-usa-launches-first-of-its-kind-certification-program-for-u-s-dairy-industry/ .................................................13, 14

Fair Trade Certified, *Shop for Fair Trade Certified Products*, https://www.fairtradecertified.org/our-community/shop-fair-trade/ (last visited Feb. 7, 2024)....11

Olivia Heffernan and Margaret Gray, *For Chobani's Fair Trade Certification to Live Up to Its Promises, We'll Need Labor Unions*, Jacobin Magazine (Jan. 31, 2022), https://jacobinmag.com/2022/01/dairy-farm workers- unions-safety-new-york-rwdsu-ufcw.......14

Teddy Ostrow & Amelia Evans*, Fair trade milk could be bad for US dairy workers' health,* Open Democracy (June 10, 2021), https://www.opendemocracy.net/en/beyond-trafficking-and-slavery/fair-trade-milk-could-be-bad- for-us-dairy-workers-health/ .............................................14

U.S. Dep't Labor, *Data Enforcement*, https://enforcedata.dol.gov/views/results.php (last visited Feb. 7, 2024) ..................................................................................................................13

## INTRODUCTION

The Court, in its September 21, 2023 Opinion & Order (Op. & Order, ECF No. 30 [hereinafter "Order"]), found deficiencies in Plaintiff Agnes Herceg's prior Complaint and dismissed it with leave to amend. Plaintiff Herceg amended her pleading with deference to the Court's Order, but Defendant Chobani, LLC moves to dismiss again. Throughout its Motion to Dismiss (Mem. Law in Supp. of Def. Chobani's LLC's Motion to Dismiss Pl.'s First Am. Compl., ECF No. 37 at 1, 7 [hereinafter "MTD"]), Chobani incorrectly contends that Plaintiff reiterates the same allegations and takes issue with the Fair Trade USA standards themselves.

Although Chobani puts much effort into mischaracterizing Plaintiff's amended allegations, Plaintiff's First Amended Complaint ("FAC") is both straightforward and clear—Plaintiff's "core [] criticism" (MTD at 7) is with ***Chobani's*** deceptive on-package claims, wherein ***Chobani*** inaccurately represents that its Products[1] uphold the "highest standards" for workers, "promote[] sustainable livelihoods," and "support[] safe . . . animal care" (FAC ¶ 19, ECF No. 31), when, in fact, ***Chobani's*** actual labor and animal care practices do not comport with reasonable consumers' understanding of ***Chobani's*** own statements. Plaintiff's grievance is ***not*** with the Fair Trade USA standards or Chobani's compliance with those standards. Plaintiff has sufficiently alleged that Chobani's practices (***not*** the Fair Trade USA standards), given Chobani's advertising at issue, are misleading, and has similarly rectified all deficiencies identified by the Court, as set forth in this chart[2]—

| Allegation in Complaint | Deficiency Identified by Court | Allegation in Amended Complaint |
|---|---|---|
| "Indeed, the Fair Trade USA Certification . . . falls far short of the 'highest standards' available to dairy | "Plaintiff's allegations are, at most, 'a criticism of the [certification's] methodology, not a description of a false, | "Indeed, farm workers in Chobani's supply chain, a particularly vulnerable labor force, are subject to numerous |

---

[1] As defined in Plaintiff's FAC. (FAC ¶ 3 n.2, ECF. No. 31).

[2] This chart is non-exhaustive and identifies some, but not all, of Plaintiff's revisions to meet the Court's concerns.

| | | |
|---|---|---|
| workers under other programs, fails to improve key factors for sustainable livelihoods beyond the bare minimum under U.S. law, and includes not standards whatsoever relating to animal care." (Compl. at 1, ECF No. 1.) | deceptive, or misleading statement about the Product. (Order at 13-14 (internal citations omitted).) | abusive labor practices, and cows raised for dairy are subject to inhumane practices." (FAC at 1.) |
| "Contrary to these advertisements, Chobani's touted certification fails to protect its workers or its animals." (Compl. ¶ 6.) | "Plaintiff's allegations are, at most, 'a criticism of the [certification's] methodology, not a description of a false, deceptive, or misleading statement about the Product. (Order at 13-14 (internal citations omitted).) | "Contrary to these advertisements, Chobani fails to protect its workers or its animals." (FAC ¶ 8.) |
| "In fact, Chobani's certification scheme was vehemently opposed by the very workers it claims to benefit. Following calls by dairy workers for better working conditions, Chobani initially met with worker-led campaigns to discuss programs that would guarantee such improvements. However, Chobani ultimately decided to instead approach Fair Trade USA to partner on a new certification with lower standards than those developed by worker-led campaigns." (Compl. ¶ 7.) | "Plaintiff's allegations are, at most, 'a criticism of the [certification's] methodology, not a description of a false, deceptive, or misleading statement about the Product. (Order at 13-14 (internal citations omitted).) | "In reality, farm workers in Chobani's supply chain are subject to the same exploitative labor practices and abuses that plague farm workers throughout the dairy industry. Neither Chobani's internal standards, nor the Fair Trade USA certification, are sufficient to protect these workers, as Chobani's advertising claims." (FAC ¶ 9.) |
| "This certification scheme also contains no standards whatsoever that apply to or support safe conditions for animals." (Compl. ¶ 9.) | "Plaintiff's allegations are, at most, 'a criticism of the [certification's] methodology, not a description of a false, deceptive, or misleading statement about the Product. (Order at 13-14 (internal citations omitted).) | "Additionally, both Chobani's actual practices as well as the Fair Trade USA certification scheme fail to ensure safe conditions for animals, as they purport to do." (FAC ¶ 11.) |
| No comparable allegation. | "However, nowhere does Plaintiff allege that the dairy | "Upon information and belief, many, if not all, of |

| | | |
|---|---|---|
| | farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Chobani's suppliers fail to implement any protections for farm workers or animals that exceed the minimum standards required by law. In fact, farms within Chobani's supply chain have often been cited for violations of labor laws that provide irrefutable evidence that neither Chobani nor the Products 'promote sustainable livelihoods' for its farm workers." (FAC ¶ 13.) |
| No comparable allegation. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | "Unfortunately, upon information and belief, farm workers in Chobani's supply chain are not paid more than the minimum wage required for agricultural workers pursuant to applicable federal and state law, nor are any additional protective measures implemented to ensure worker safety at Chobani supplier farms. Additionally, animals in Chobani's supply chain are subjected to the same inhumane conditions and abuses that plague the dairy industry." (FAC ¶ 26.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15) | Allegations describing how dairy workers suffer routine "discrimination in the workplace;" "report[] feeling rushed on the job, and normally work 12-hour shifts, [] with only a minimal five-minute break;" regularly experience "at least one instance of wage theft;" suffer from work related injuries, many of which require medical attention; often receive "no job training of any kind;" and frequently |

| | | |
|---|---|---|
| | | live in "substandard" housing. (FAC ¶¶ 34-40.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning OSHA-identified workplace hazards at Chobani's New York facility at 669 Country Road 25, New Berlin, New York from 2019-2021, including: causing risk of electrocution to workers; failing to "afford []employees [the required] level of protection" when cleaning filling machines; "failing to provide appropriate machine guarding necessary to protect machine operators . . . from hazards at the 'upstacker'"; and failing to provide appropriate machine guarding in other circumstances. (FAC ¶¶ 41-44.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning OSHA-identified workplace hazards at Chobani's Idaho facility at 3450 Kimberly Road, Twin Falls, Idaho from 2014-2018 including: "failing to provide adequate training;" and "forcing 'employees [to] exit[] . . . where an ammonia leak was occurring.'" (FAC ¶¶ 45-48.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning worker abuse on Marks Farms, which, upon information and believe, sources some of the dairy used to make the Products including: routine abuse from employers; workplace accidents and lack of training; "routine verbal abuse and occasional physical violence in the workplace;" and employer retaliation to |

| | | worker organizing. (FAC ¶¶ 49-55.) |
|---|---|---|
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning OSHA-identified workplace hazards at Marks Farms from 2014-2018 including: failing to train workers on the risks of hazardous chemical exposure; failing to mitigate the risk of electrocution; and exposing employees to the risk of being caught in the manure separator machine. (FAC ¶¶ 56-58.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning workers deaths in New York dairies that supply Chobani. (FAC ¶¶ 59-61.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning the conditions cows are raised under in industrial dairy operations including: repeated impregnation by artificial insemination; separation of mothers and calves immediately after birth; extreme confinement of baby calves; inability to express natural cow behaviors; routine suffering from lameness, infection, deformities, and mastitis. (FAC ¶¶ 65-73.) |
| "Despite broadcasting to consumers that the Products support 'animal care,' the APS is without **any** animal care or welfare provisions. It is therefore misleading for Chobani to present its Fair Trade USA certification to consumers as supporting safe animal care." (Compl. ¶ 51.) | "Accordingly, Plaintiff's allegations are implausible: the APS are not entirely silent about animal welfare." (Order at 18 (internal quotations omitted).) | "Despite broadcasting to consumers that the Products support 'animal care,' the APS is without **any** animal care or welfare provisions that provide protection to animals beyond what is required by law. It is, therefore, misleading for Chobani to present its Fair |

| | | Trade USA certification to consumers as supporting animal care that exceeds state or federal standards. Upon information and belief, neither Chobani nor its supplier farms have any animal care standards in place that go beyond what is already required by state and federal law. Upon information and belief, neither Chobani nor its supplier farms actually implement any animal care standards that go beyond what is already required by state and federal law." (FAC ¶¶ 75-77.) |
| No comparable allegations. | "However, nowhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.) | Allegations concerning animal mistreatment and worker abuses at dairies within the DFA cooperative, which, upon information and belief, Chobani sources all and/or most of its dairy used to make the Products. (FAC ¶¶ 78-86.) |

Chobani, unhappy with Plaintiff's well-pled claims, downplays their significance, mischaracterizes their ultimate meaning, and questions their relevance. Of note, however, Chobani's Motion to Dismiss does not reflect the proper standards applicable on a Rule 12(b)(6) motion. Instead, Chobani seeks to impose Rule 56 or trial-level standards of evidence and proof on Plaintiff Herceg at the pleading stage. This is improper—and a review of complaints within this district and elsewhere demonstrate that Plaintiff Herceg has sufficiently alleged that Chobani's marketing can, and does, deceive a reasonable consumer as a matter of law.

## STANDARD OF REVIEW

This Court, in its Order, correctly identified the standard of review applicable on a Rule 12(b)(6) motion. Namely, Plaintiff Herceg must provide "more than labels and conclusions"; more than a "formulaic recitation of the elements of a cause of action"; "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; and enough supporting facts to "nudge[]" her claim "across the line from conceivable to plausible." (Order at 7 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007)).) Although the Court found that Plaintiff Herceg's original claims did not meet this plausibility standard, Plaintiff's FAC has more than met this burden.

## ARGUMENT

I.    **Plaintiff Has Sufficiently Pled Claims Under New York General Business Law Sections 349 and 350.**

Plaintiff Herceg has sufficiently pled all the required elements for a claim of deceptive acts and practices and false advertising under New York General Business Law ("GBL") Sections 349 and 350. To plausibly state a claim under either GBL Section 349 or GBL Section 350, Plaintiff Herceg must allege that Defendant Chobani "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [Plaintiff Herceg] suffered injury as a result of the allegedly deceptive act or practice." (Order at 10 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 U.S. Dist. LEXIS 9714, at *6 (S.D.N.Y. Jan 19, 2021)).) Specifically, Plaintiff Herceg must "plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Id.* (quoting *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (Seibel, J.); *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 U.S. Dist. LEXIS 25594, at *11 (E.D.N.Y. Feb. 13, 2020)).)

7

"Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage *only where*, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw *are 'patently implausible' or unrealistic*." (*Id.* at 11 (quoting *Eidelman v. Sun Prod. Corp.*, No. 16-CV-3914 (NSR), 2017 U.S. Dist. LEXIS 156420, at *12 (S.D.N.Y. Sept. 25, 2017); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 U.S. Dist. LEXIS 126880, at *60 (E.D.N.Y. Sept. 22, 2015)) (emphasis added).) The Court previously found that Plaintiff Herceg did not plausibly allege consumer deception because she did not specifically allege the ways "Chobani *itself* is not 'promoting sustainable livelihoods'" or has failed to comply with Fair Trade USA standards—"Plaintiff's allegations are, at most, 'a criticism of the [certification's] methodology" and a criticism of Chobani's decision to follow and promote those standards. (Order at 13-14 (internal citations omitted) (emphasis added).)

In her FAC, Plaintiff Herceg clarifies that her disagreement is *not* just with Fair Trade USA's standards or Chobani's implementation and approval of those standards. Plaintiff Herceg recognizes that Chobani has the right to select a certifying entity for the Products and to advertise whether those Products meet that certifier's own internal standards. But Chobani has no right to misrepresent how the Products are sourced or to misrepresent what its own practices mean to consumers. *See, e.g.*, *Dorris v. Danone Water of Am.*, No. 22 Civ. 8717 (NSR), 2024 U.S. Dist. LEXIS 5262, *4, *21 (S.D.N.Y. Jan. 10, 2024) (holding that use of a third-party certification seal can be independently misleading even if the product conforms to that certification's standards). As the FAC alleges, Chobani's consumer-oriented advertising, which promises that the Products were made pursuant to the "highest standards" that "empower[] dairy farmers, support[] safe working conditions and animal care" was both deceptive (because "*Chobani's* practices fall short of the comprehensive worker protection and safe animal care that *it* advertises") and material to

Plaintiff Herceg's purchasing decisions (FAC ¶¶ 19, 87-109 (emphasis added).) "Plaintiff Herceg . . . would not have been willing to pay the same amount for the Products [she] purchased and/or would not have been willing to purchase the Products at all, or to purchase as many of the Products" had she known the truth of Chobani's own labor, wage, and animal care practices. (*Id.* ¶ 109.) These allegations sufficiently establish injury under this jurisdiction's precedent—"no more is necessary at this stage."[3] *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-1171 (LJL), 2020 U.S. Dist. LEXIS 208861, at *31 (S.D.N.Y. Nov. 9, 2020) (holding that plaintiffs had alleged injury where they "would not have purchased the hardware and corresponding [] membership, or would not have purchased it on the same terms, if they knew the truth").

With these allegations, Plaintiff Herceg has more than "nudged" her claims pursuant to GBL Sections 349 and 350 "across the line from conceivable to plausible" under this jurisdiction's relevant precedent. *Ashcroft*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570); *see, e.g.*, *Wiggins v. Unilever U.S.,, Inc.*, No. 21 Civ. 1964 (PGG), 2023 U.S. Dist. LEXIS 128592, at *17-18 (S.D.N.Y. July 25, 2023) (Gardephe, J.) ("Courts in this Circuit have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have

---

[3] Despite Chobani's repeated arguments to the contrary, Plaintiff Herceg is not required to allege "what *she* understood the Challenged Representations to mean" to establish injury under GBL Sections 349 or 350. (MTD at 2, 11, 17 (emphasis added).) This argument is inappropriate for resolution at the pleading stage, and, regardless, is simply not the law of this jurisdiction. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 388 (S.D.N.Y. 2016) (Roman, J.) ("The product specific labeling and packaging claims, however, *do not require proof as to individual understanding* and can be judged based on the objective standard provided.") (emphasis added); *Hughes v. Ester C Co.*, 317 F.R.D. 333, 345-46 (E.D.N.Y. 2016) ("Defendants' arguments . . . that 'The Better Vitamin C lacks an objective meaning'" is not persuasive because "it is not necessary . . . to demonstrate that the . . . representation carries a uniform definition, or that all potential class members were, in fact misled by the representation. . . . Liability under [New York's consumer protection laws] does not depend on whether . . . the product met the consumers' personal, subjective expectations' . . . [r]ather, . . . the common thread here is the question of whether a *reasonable* consumer was misled by the claim of 'The Better Vitamin C.'") (quoting *Belfiore v. P&G*, 311 F.R.D. 29, 62 (E.D.N.Y. 2015)); *Ackerman v. Coca Cola Co.*, No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232, at *36 (E.D.N.Y. July 17, 2013) ("[W]here the consumer protection statute at issue supplies an objective test . . . [it] do[es] not require an investigation into 'class members' individual interactions with the product.").

purchased."); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (Cronan, J.) (citing *DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 U.S. Dist. LEXIS 10733, at *15 (S.D.N.Y. Jan. 23, 2018)) ("The allegation that Plaintiff would not have made this purchase, or would not have paid the amount she did, is sufficient for Article III injury.").

**II.    Plaintiff Has Sufficiently Pled Claims Establishing Chobani's Deceptive Advertising and Misleading Representations.**

> **A.    Defendant Chobani's Representations That the Products Represent "The Highest Standards" and "Promot[e] Sustainable Livelihoods" Are Deceptive and Misleading.**

The Court initially rejected Plaintiff Herceg's claim that Chobani "should use a different [certification process]" because it "does not plausibly suggest that what Defendant in fact says is materially misleading." (Order at 13 (quoting *Dwyer v. Allbirds, Inc.*, 589 F. Supp. 3d 137, 150 (S.D.N.Y. 2022) (Seibel, J.)); (*see also id.* (citing *Lee v. Can. Goose U.S., Inc.* No. 20-CV-9809 (VM), 2021 U.S. Dist. LEXIS 121084, at *17 (S.D.N.Y. June 29, 2021) ("[T]he alleged inadequacy of the standards imposed is not enough to render the statements actionable [under the CPPA].").) The Court rejected any distinction between Plaintiff Herceg, on the one hand, challenging "Chobani's prominent and independent representations about what [Fair Trade USA] certification means for the Products" and, on the other hand, challenging "Chobani calling the Products 'Fair Trade USA certified.'" (Order at 14 (quoting Opp. to MTD 9).) Specifically, the Court overruled Plaintiff's reliance on *Lee v. Canada Goose*, which denied dismissal "as to the representations that provided qualitative details about what some of these certifications mean for the products." (*Id.*) The Court distinguished this case from *Lee*:

> [T]hough the plaintiff's allegations were "thin," the plaintiff in *Lee* provided actual, actionable examples of fur harvesting practices that were not "ethical." . . . Here, even construing the Complaint in the light most favorable to Plaintiff, there are no such comparable or plausible allegations. . . . [N]owhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations

10

allegedly made on the packaging. . . . Plaintiff instead rests upon a hypothetical, surmising that because the Fair Trade USA certification's guarantees are not as "strong" as Milk for Dignity or other programs, the dairy farms must not be following those heightened requirements. However, without more, there is no plausible basis to make such a leap where Plaintiff does not allege as such.

(Order at 14-16.)

Plaintiff Herceg, in her FAC, remedies this deficiency by alleging specific conduct on "dairy farms that Chobani sources from [which] fall[s] far below" Chobani's promises that the Products are sourced to the "highest standards" and "promot[e] sustainable livelihoods." (*Id.* at 15-16.) These allegations clearly demonstrate that Plaintiff Herceg's claim against Chobani does not rest upon the sufficiency of the Fair Trade USA certification standards or Chobani's own compliance with such standards. Instead, Plaintiff Herceg identifies those ways in which *Chobani's practices* do not comport with reasonable consumer expectations given *Chobani's consumer-facing conduct* and *Chobani's advertising* of *Chobani's Products*.[4] In particular, Plaintiff alleges that:

- Farm workers in Chobani's supply chain are paid only the minimum wage required for agricultural workers pursuant to applicable federal and state law. (FAC ¶ 26.)

- Upon information and belief, farm workers living and working at the upstate New York dairies that supply Chobani with dairy used to make the Products suffer routine and long-standing exploitative labor abuses. Specifically, half of those farm workers have faced discrimination in the workplace and one-fifth reported that their boss, manager, or coworkers have made "explicit references to their ethnicity and/or citizenship status in a demeaning or intimidating manner." (*Id.* ¶¶ 34-35.)

- Those same farm workers frequently work 12-hour shifts, often, with only a five-minute break. (*Id.* ¶ 36.)

- 28% of those farm workers have experienced at least one instance of wage theft in some form. (*Id.* ¶ 37.)

---

[4] Tellingly, Plaintiff Herceg is not moving against other products that bear the Fair Trade USA certification even though more than 1,500 companies hold this certification. *See* Fair Trade Certified, *Shop for Fair Trade Certified Products*, https://www.fairtradecertified.org/our-community/shop-fair-trade/ (last visited Feb. 7, 2024).

- Two-thirds of those farm workers experienced one or more work-related injuries, and 68% of those injured required medical attention. (*Id.* ¶ 38.)

- One-third of those farm workers received no job training of any kind. (*Id.* ¶ 39.)

- 97% of those farm workers live in on-farm, employer-provided housing, which is frequently substandard. 58% had insect infestations in this housing, 48% lived without locks on their doors, 32% had holes in their walls and/or floors, and 32% had insufficient ventilation. (*Id.* ¶ 40.)

- OSHA records reveal documented workplace hazards at Chobani's New York facility at 669 Country Road 25, New Berlin, New York from 2019-2021 including exposing farm workers to the risk of electrocution and failing to provide appropriate machine guarding to protect farm workers from machine hazards. (*Id.* ¶¶ 41-44.)

- OSHA records reveal documented workplace hazards at Chobani's Idaho facility at 3450 Kimberly Road, Twin Falls, Idaho from 2014-2018 including failing to train workers and forcing employees to walk through an active ammonia leak. (*Id.* ¶¶ 45-48.)

- Upon information and belief, Chobani sources dairy used to make the Products from Marks Farms, at 6314 Cannan Road, Lowville, New York.[5] Workers at Marks Farms often work consecutive 12-hour shifts and frequently cannot take breaks to eat, drink, or go to the bathroom without falling behind in their work. (*Id.* ¶¶ 49, 51.)

- Workers at Marks Farms suffer routine verbal and occasional physical violence. (*Id.* ¶ 54.)

- When workers at Marks Farms attempted to organize to discuss their workplace concerns, Marks Farms employers fired all the organizers of these meetings, a move that the Workers' Center of Central New York calls "a brazen act of employer retaliation." (*Id.* ¶ 55 (internal citations omitted).)

- Similarly, OSHA records reveal documented workplace hazards at Marks Farms in 2014 and 2018 including failing to train employees on hazardous chemical exposure, exposing workers to the risk of electrocution, and exposing workers to machine hazards. (*Id.* ¶¶ 56-58.)

- Because of these hazardous working conditions, worker deaths are common at those New York dairies that supply Chobani. Specifically, in 2011, Richard Fesko died in a manure pit accident while working at a dairy farm that supplies dairy to Chobani for use in the Products. In 2017, a worker at Marks Farms was "caught in a machine and killed." (*Id.* ¶¶ 59-61 (internal citations omitted).)

---

[5] Notably, while Chobani disputes the relevance of Plaintiff's allegations, nowhere in its MTD does Chobani deny that it sources some of the dairy used to make the Products at issue from Marks Farms. (MTD at 9, n.11.)

At the pleading stage, where "the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff," *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 345 (S.D.N.Y. 2020) (Engelmayer, J.), these specific allegations of workplace exploitation at facilities either owned and operated by Chobani, or within Chobani's supply chain, are more than sufficient to "nudge[]" Plaintiff Herceg's claim "to plausible." *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. At the motion-to-dismiss stage, dismissal is warranted only if Defendant has "satisf[ied] the heavy burden of extinguishing the possibility that a reasonable consumer could be misled" or where Plaintiff's allegations "border[] on fantasy." *Eidelman*, 2017 U.S. Dist. LEXIS 156420, at *13. Chobani has simply not met that burden in this case.

Chobani incorrectly argues that Plaintiff's amended allegations detailing specific labor abuses at facilities within Chobani's supply chain are irrelevant because they either pre-date Chobani's Fair Trade USA certification or include some critique of the Fair Trade USA certification. (MTD at 7-9.) This argument fails for two reasons. First, Plaintiff's allegations need not post-date[6] Chobani's Fair Trade USA certification because Plaintiff Herceg ***is not challenging the sufficiency of the Fair Trade USA certification program or Chobani's compliance with that certification***. It is Defendant Chobani here, not Plaintiff Herceg, who insists on incorporating Fair Trade USA's certification within the scope of Plaintiff's Amended Complaint. The allegations detailed above, *supra* § I-II, demonstrate a long-standing pattern of egregious workplace abuses that is plainly relevant to determining whether Chobani's labor practices comport with reasonable consumer expectations of Chobani's representations that the Chobani Products uphold the "highest

---

[6] Although Chobani publicly announced its participation in the certification on May 6, 2021, Fair Trade Certified, *Fair Trade USA Launches First-Of-Its-Kind Certification Program for U.S. Dairy Industry* (May 6, 2021), https://www.fairtradecertified.org/news/fair-trade-usa-launches-first-of-its-kind-certification-program-for-u-s-dairy-industry/ [hereinafter Fair Trade Certified], Plaintiff points to an OSHA violation issued on January 22, 2021, mere months before Chobani's formal certification announcement. U.S. Dep't Labor, *Data Enforcement*, https://enforcedata.dol.gov/views/results.php (last visited Feb. 7, 2024).

standards" for its workers, "promote[] sustainable livelihoods." This Court itself acknowledged the relevance, and necessity, of such allegations—"[N]owhere does Plaintiff allege that the dairy farms that Chobani sources from indeed fall below the representations allegedly made on the packaging." (Order at 15.)

Second, it does not matter if some of the sources Plaintiff cites to in support of her allegations concerning labor abuses in Chobani's supply chain also criticize Chobani's involvement with, and adoption of, the Fair Trade USA standards. Critiques of Chobani's own practices and critiques of the Fair Trade USA certification are inexorably linked because, as Chobani itself acknowledges, Chobani was instrumental in, and partnered with, Fair Trade USA in developing those standards.[7] There is nothing inappropriate about the sources Plaintiff relies on critiquing both Chobani's own labor practices, while also critiquing Chobani's involvement in the development of a substandard certification program that Chobani itself helped create. What actually matters here is how Plaintiff, and ***not*** the authors of the original articles, cites to these sources. And while the original authors criticize both Chobani's own practices and Chobani's development of the Fair Trade Standards, it is clear from Plaintiff's FAC that Plaintiff uses these sources ***solely as support for her allegations concerning Chobani's practices***, not for any concerns the source authors may have with the Fair Trade USA certification.[8]

---

[7] *Id.* ("Fair Trade USA™ ***and*** Chobani, LLC have launched a groundbreaking certification.") ("The announcement ***is an outgrowth of Fair Trade USA's partnership with Chobani***.") (emphasis added).

[8] *See* Teddy Ostrow & Amelia Evans, *Fair trade milk could be bad for US dairy workers' health,* Open Democracy (June 10, 2021), https://www.opendemocracy.net/en/beyond-trafficking-and-slavery/fair-trade-milk-could-be-bad- for-us-dairy-workers-health/ (critiquing Fair Trade USA but only supporting allegation that "dairy workers suffer some of the highest rates of fatalities and injuries" (FAC ¶ 29 & n.7)); Olivia Heffernan and Margaret Gray, *For Chobani's Fair Trade Certification to Live Up to Its Promises, We'll Need Labor Unions*, Jacobin Magazine (Jan. 31, 2022), https://jacobinmag.com/2022/01/dairy-farm workers- unions-safety-new-york-rwdsu-ufcw (critiquing Fair Trade USA but only supporting allegations that "Fatalities on New York dairy farms rose after Chobani began producing yogurt in 2007" (FAC ¶ 30 & n.9)); Anna Canning, *Fair Trade Dairy at One Year: Labor Abuses, Low Standards, and Misleading Labels*, Fair World Project (Mar. 29, 2022), https://fairworldproject.org/fair-trade-dairy-chobani-labor-abuses/#link1 (critiquing Fair Trade USA, but only supporting allegations that "farm workers have few legal protections . . . because they are exempt from most key labor laws" and "Chobani sources the dairy used to make the Products . . . from various Dairy Farms of America [] farms" (FAC ¶¶ 31, 32 & ns.10 & 11)).

Additionally, Chobani argues that Plaintiff's claims fail, because the "only reasonable way to interpret the Challenged Statements" (MTD at 12), is either (1) "to construe them as explaining Chobani's compliance with the Fair Trade USA standards," (*id.*), or alternatively, (2) to construe the claim "'sustainable livelihoods' [as only] pertain[ing] to ***wages***."[9] (*Id.* at 15 (emphasis in original).) In so arguing, Chobani makes an extraordinarily broad declaration about consumer perception of the Challenged Statements, *i.e.*, that there are only two reasonable (and yet, ironically, internally conflicting) interpretations of the statements at issue, and those reasonable interpretations match exactly what ***Chobani*** thinks those statements mean. (MTD at 12-13.) But what ***Chobani*** believes its claims should mean is not applicable to determining how a ***reasonable consumer*** actually understands those representations, and Chobani offers no support for the proposition that ***consumers*** narrowly understand the claims "highest standards" and "promot[e] sustainable livelihoods" to match one of its two contradictory definitions.[10] Regardless, Chobani's efforts to debate how a consumer might understand these statements are premature because "[w]hat a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." *Eidelman*, 2017 U.S. Dist. LEXIS 156420, at *11-12 (collecting cases) (quoting *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186, at *27 (E.D.N.Y. Sept. 14, 2015)).

Finally, there is ample authority, both from this jurisdiction and elsewhere, holding that Chobani's statements can be independently misleading, even though Chobani's Products are certified by Fair Trade USA and Chobani has (presumably) complied with those certification

---

[9] Interestingly, despite Chobani's assertion that the "***only*** reasonable way" to interpret the Challenged Statements is that they indicate compliance with Fair Trade USA standards, Chobani then offers an alternative meaning for the statement "sustainable livelihoods" as pertaining "***only***" to wages. (MTD at 12, 15 (emphasis added).)

[10] Nor would such support, if it exists, be appropriate here—on a Rule 12(b)(6) motion the Court is limited to considering only those allegations in the Complaint and those sources incorporated by reference therein. *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 U.S. Dist. LEXIS 15171, at *54 (S.D.N.Y. Feb. 5, 2016).

standards if, as is the case here, Chobani's actual practices do not comport with reasonable consumer understanding of the representations at issue. *See, e.g.*, *Dorris*, 2024 U.S. Dist. LEXIS 5262, at \*4, \*21 (holding that use of a third-party certification seal can be independently misleading even if the product conforms to that certification's standards); *Rankin v. Arca Cont'l S.A.B. de C.V.*, No. 20-CV-1756, 2023 U.S. Dist. LEXIS 142602, at \*5 (E.D.N.Y. Aug. 15, 2023) (holding that use of "certification" designed to mimic another, real certification can be deceptive to consumers); *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, No. 22-cv-05086, 2023 U.S. Dist. LEXIS 100438, at \*17  (N.D. Cal. May 19, 2023) ("While the Court does not find it plausible that a reasonable consumer would interpret 'high standards of animal care [that] go above and beyond' to refer to the minimum standards . . . set by certain third-party certification groups, . . . the statement about 'high standards of animal care' potentially runs afoul of consumer expectations regarding the early separation of calves from their mothers.").

### B.    Defendant Chobani's Representations That the Products "Support[] Safe . . . Animal Care" Are Deceptive and Misleading.

The Court initially rejected Plaintiff Herceg's claim that Chobani misleads consumers by claiming that the Fair Trade USA Certification "supports safe . . . animal care" when the Agricultural Production Standard ("APS") that undergirds the certification is "entirely silent about animal care" (Compl. ¶ 50, 51), because APS only requires that producers "comply with 'any local and national laws that govern the care and treatment of farm animals.'" (Order at 17 (quoting MTD 11-12).) The Court reasoned that the APS is not "silent" on animal care when it requires that certified companies comply with existing law and that Plaintiff's remaining arguments "solely quibble with the alleged inadequacy of the [Fair Trade USA] standards." (*Id.* at 18 (internal citations omitted).)

The FAC clarifies that Plaintiff's claims regarding the APS are not alleging *literal* "silence" on animal welfare, but the lack of any standard beyond the minimal requirement that certified suppliers must comply with existing law, a "standard" that is nothing special because it is what *all* suppliers, whether certified or not, must meet: "Despite broadcasting to consumers that the Products support 'animal care,' the APS is without *any* animal care or welfare provisions that provide protection to animals beyond what is required by law." (FAC ¶ 75.) It is therefore, misleading for Chobani to represent that the Products support animal care that "exceeds state or federal standards." (*Id.*)

The FAC further alleges that, contrary to Chobani's consumer-facing representations, this minimum requirement, *i.e.*, *the legal requirement already applicable to all suppliers*, is Chobani's only "standard" for animal welfare:

- "Upon information and belief, neither Chobani nor its supplier farms have any animal care standards in place that go beyond what is already required by state and federal law." (*Id.* ¶ 76.)

- "Upon information and belief, neither Chobani nor its supplier farms actually implement any animal care standards that go beyond what is already required by state and federal law." (*Id.* ¶ 77.)

And in line with this Court's instruction to identify ways in which Chobani's own supplier dairies fall below reasonable consumer expectations, Plaintiff Herceg's FAC (1) identifies ways in which cows raised for milk are routinely subject to inhumane conditions, including those cows who supply milk for Chobani's Products (*id.* ¶¶ 65-73), and (2) points to a history of undercover investigations into dairies within the Dairy Farmers of America ("DFA") cooperative, the *only supplier cooperative that Chobani uses to source its milk*,[11] which reveal workers intentionally

---

[11] (FAC ¶ 33 n.11.) Again, as referenced, *supra* note 5, Chobani does not, and cannot, deny that it sources the milk used to make the Products from farms within the DFA cooperative.

stabbing, hitting, and punching cows under their care, among other abuses. (*Id*. ¶¶ 78-86 (emphasis added).)

Chobani, again, dismisses the clear relevance of Plaintiff's allegations of deliberate and intentional abuse inflicted on dairy cows kept on farms within Chobani's supplier cooperative. (MTD at 16.) And, despite Plaintiff Herceg's clearly amended allegations that her concern with Chobani's animal care standards is ***not*** that they are literally silent on animal care, but that they ***do not require anything more than the assurance that producers are simply not violating existing law***, Chobani inaccurately argues that the Court already found that these allegations were insufficient to support Plaintiff's claims. (*Id.*)

Chobani's arguments are unavailing. First, as described more fully *supra*, § II(B), Plaintiff's allegations of undercover investigations documenting deliberate animal abuse and inhumane conditions within Chobani's supplier cooperative need not post-date Chobani's Fair Trade USA certification because Plaintiff Herceg is not challenging the sufficiency of the Fair Trade USA certification program. Again, it is Defendant Chobani, and not Plaintiff Herceg, who insists on placing the Fair Trade certification at issue when Plaintiff's amended allegations clearly challenge ***Chobani's*** practices and misrepresentations. It is more than plausible that reasonable consumers would not expect Products advertised as "support[ing] safe . . . animal care" to be sourced from farms within a dairy cooperative that has a documented history of intentional animal abuse. *Takahashi-Mendoza*, 2023 U.S. Dist. LEXIS 100438, at *16-17 ("Plaintiff has plausibly alleged that a reasonable consumer could find Defendant's claim about its 'commitment to the highest . . . animal care practices' is misleading because consumers could plausibly expect that such practices would not include the early separation of mother and calf.").

Next, although Chobani promises consumers that the Products "support[] . . . safe animal care," the only animal care requirement that its dairies are obligated to meet is to ensure that they do not violate existing law. (FAC ¶ 75.) By making this claim, Chobani leads consumers to believe that it is doing something more for the cows in its supply chain than companies that do not make similar animal care claims. But Chobani is not doing anything special, because *every* dairy must comply with the law. Thus, Chobani is misleading consumers. *See, e.g.*, *Takahashi-Mendoza*, U.S. Dist. LEXIS 100438, at *16-17 (holding that representations about "commitment" to "highest … animal care practices" can be misleading when defendant engages in practices that meet legal standards but are shunned by certifying organizations' minimum requirements); *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1117-18 (N.D. Cal. 2018) ("Costco argues that the challenged representations are, at most, a promise . . . that the Products were designed in accordance with 'safer chemistry' guided by the EPA, in conformance with the OECD biodegradable standards and in accordance with the USDA 'biobased' standards. . . . Here, the meaning of the challenged and unchallenged statements by a reasonable consumer in light of the allegedly toxic and hazardous ingredients in the Products is not easily determined (or easily dispelled) and cannot be resolved on this motion.").

III.     **Plaintiff Has Sufficiently Pled Claims Establishing Defendant Chobani's Failure to Include Material Facts to Remedy its Misrepresentations.**

The Court found that Plaintiff Herceg did not plausibly allege that Defendant Chobani "intentionally omits material facts that could correct, qualify, or remedy its misrepresentations" because such a claim can stand only if Defendant Chobani alone possess the omitted information. (Order at 16 (citing *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 U.S. Dist. LEXIS 48769, at *30 (S.D.N.Y. Mar. 18, 2022); *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-CV-2026 (DLC), 2021 U.S. Dist. LEXIS 213930, at *14 (S.D.N.Y. Nov. 4, 2021)).) According to the Court,

Plaintiff Herceg conceded that Chobani alone did not possess such information because a "consumer could research the Fair Trade USA standard for dairies as well as existing law and other available standards." (Order at 16.)

The FAC explains that the omitted information is **not** Fair Trade USA standards, but the reality of Chobani's labor, wage, and animal care practices (FAC ¶ 94, ECF No. 31), and that Defendant Chobani alone knows the identities of all its supplier dairies. Specifically, unlike the Fair Trade USA standards and applicable laws governing farmed animal care, consumers would need to obtain non-public information about Chobani's supply chain that Chobani alone possesses, *i.e.*, consumers would need to identify Chobani's processing facilities that make the Products, and from there, identify which dairies are supplying milk to those processing facilities,[12] and from there (somehow) identify those dairies' labor, wage, and animal welfare practices in order to determine whether those practices comport with Chobani's marketing representations. This is an impossible task—***the only publicly available information concerning Chobani's supply chain is that Chobani sources its milk from dairies within the DFA cooperative***, which as Chobani itself admits, "is a cooperative with more than 11,000 member farms." (MTD at 15.)

Chobani again argues that "given the extensive publicly available sources that Plaintiff cites in her FAC discussing the Fair Trade USA standards, the dairy industry generally, and Chobani's manufacturing facilities specifically" Plaintiff fails to make out a claim for omission liability. In so arguing, (1) Chobani ignores Plaintiff's amended allegations clarifying what

---

[12] Once the milk arrives at a processing facility, a consumer interested in obtaining this information would likely have to observe Chobani's milk delivery trucks entering the premises and then follow those milk delivery trucks along their routes to other processing facilities and farms to identify which farms are, in fact, supplying Chobani. These consumers would need to have the availability to observe Chobani's milk deliveries likely for days on end, and then obtain permission to enter private farm premises and observe the conditions therein. If the farm owner denies entry (as they likely would), a consumer would then need to engage in illegal conduct to obtain the information. Chobani cannot plausibly suggest that information is "public" or "reasonably obtain[able]" when a consumer would need to violate the law to actually obtain that information. *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 104 (S.D.N.Y. 2022) (Liman, J.).

omissions are actually at issue here;[13] (2) gravely overstates the "public" nature of the omitted information; and (3) fails to account for the impossibility of consumers actually obtaining that information.

Plaintiff Herceg's FAC plausibly states a claim for omission liability because (1) Defendant Chobani failed to include facts that would correct consumer impressions concerning its labor, wage, and animal care practices; (2) the relevant information, *i.e.* which dairies Chobani sources from and those dairies' specific labor, wage, and animal welfare practices is solely within Defendant Chobani's possession; ***and*** (3) consumers cannot reasonably obtain this information without engaging in extensive and impracticable, if not literally impossible, investigatory work. *See Fishon*, 620 F. Supp. 3d at 104 ("[A]s the weight of authority now understands the law, where a defendant fails to supply a consumer information that it alone possesses, and where that information would be material or important to a reasonable consumer and ***where the consumer could not have reasonably obtained the information other than through the defendant***, Sections 349 and 350 provide a basis for relief.") (emphasis added); *Pellman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (Sweet, J.) ("[W]here the business alone possesses the material information . . . liability would turn on whether the plaintiffs possessed, ***or could reasonably have obtained*** the information.") (emphasis added) (internal citations omitted); *see also, e.g.*, *Feliciano v. GM LLC*, No. 14 Civ. 06374 (AT), 2016 U.S. Dist. LEXIS 194728, at *25-27 (S.D.N.Y. Mar.

---

[13] Chobani first argues that the limited public information concerning its supply chain, *i.e.*, that Chobani sources its dairy from farms within the DFA cooperative, is too general to support Plaintiff's claims of deception, yet asserts that this same limited information is specific enough to defeat omission liability. (*Compare* MTD at 15 ("Moreover, while Plaintiff alleges 'upon information and belief' that Chobani sources dairy from various Dairy Farmers of America farms . . . Dairy Farmers of America is a cooperative with more than 11,000 member farms. Accordingly, Plaintiff cannot plausibly allege that Chobani sources milk from dairy farms that do not 'support sustainable livelihoods.'") (internal quotation omitted), *and* MTD at 16 ("[O]nly ***two*** Dairy Farms [sic] of America members farms—out of thousands of member farms." (emphasis in original)), *with* MTD at 21-22 ("[G]iven the extensive publicly available sources that Plaintiff cites in her FAC discussing the Fair Trade USA standards, the dairy industry generally, and Chobani's manufacturing facilities specifically.").) Chobani can't have it both ways.

31, 2016); *Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 U.S. Dist. LEXIS 146263, at \*23-25 (E.D.N.Y. Sept. 20, 2015); *Bildstein v. MasterCard Int'l, Inc.*, No. 03 Civ. 9826 (WHP), 2005 U.S. Dist. LEXIS 10763, at \*10-11 (S.D.N.Y. June 7, 2005).

**IV.        Plaintiff Has Sufficiently Pled a Claim for Breach of Express Warranty.**

To state a claim for breach of express warranty under New York law, Plaintiff Herceg must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." (Order at 19 (quoting *Wynn*, 2021 U.S. Dist. LEXIS 9714, at \*21; *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (Román, J.)).) Plaintiff Herceg must also "within a reasonable time after [s]he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy." (*Id.* (quoting N.Y. U.C.C. § 2-607(3)(a); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014)).)[14]

The Court held that Plaintiff Herceg failed to state a claim for breach of express warranty for the same reason that she failed to state claims pursuant to GBL Sections 349 and 350: "Plaintiff has not alleged that the Products do not comport with the statements on their packaging, and thus ha[s] failed to allege a breach of any warranty. At best, Plaintiff has alleged that Defendant has indeed followed the Fair Trade USA standards, which is what is represented on the Products." (Order at 19 (internal citations omitted).)

As the FAC clarifies, the warranty that Plaintiff Herceg alleges is not that the Products are Fair Trade USA certified or that Chobani failed to comply with Fair Trade USA certification standards, but that the Products in fact adhere to the "highest standards," "promote sustainable

---

[14] On May 6, 2022, a pre-suit notice letter was sent to Chobani providing notice of Defendant's breach of express warranty under the common law of the states where the Products are sold. (Compl. ¶ 129 & n.34.)

livelihoods," and support "safe" animal care. As set forth above, the clarifications in the FAC, which are directly responsive to the Court's concerns, demonstrate that Plaintiff Herceg's case is premised on Chobani's **own** representations about its **own** Products. Pursuant to the Court's Order, whereas Plaintiff has properly pleaded her claims of deception pursuant to GBL Sections 349 and 350, her claim for breach of express warranty is properly pled for the same reasons. *See, e.g.*, *Richardson v. Edgewell Pers. Care, LLC*, No. 23-18, 2023 U.S. App. LEXIS 28725, at *6 (2d Cir. Oct. 30, 2023) ("Claims for deception and breach of express warranty both depend on what a reasonable consumer would believe, so allegations sufficient to plead one generally suffice to plead the other."); *Mogull v. Pete & Gerry's Organics, LLC*, 588 F. Supp. 3d 448, 456 (S.D.N.Y. 2022) (Briccetti, J.) ("Just as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349 and 350, it is equally inappropriate to determine they are not misleading for the warranty claim.").

## CONCLUSION

For all the reasons discussed herein, Plaintiff Herceg respectfully requests that this Court deny Chobani's Motion to Dismiss in its entirety. To the extent the Court is inclined to dismiss any portion of the First Amended Complaint, Plaintiff respectfully requests leave to amend.

Dated: February 7, 2024                          Respectfully submitted,

                                        **RICHMAN LAW & POLICY**

                                        _____
                                        Kim E. Richman
                                        **Richman Law & Policy**

23

1 Bridge Street, Suite 83
Irvington, New York 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com

**ESBROOK P.C.**
Christopher Esbrook
321 N. Clark, Suite 1930
Chicago, IL 60654
T: (312) 319-7680
christopher.esbrook@esbrook.com

*Attorneys for Plaintiff Herceg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2024, the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I further certify that a copy of the foregoing document was served by e-mail on the parties who receive electronic notice in this case through the Court's ECF system.

By: */s/ Kim E. Richman*
Kim E. Richman